22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 0 2 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. B 01-115 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SERVANDO LUNA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**
**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

**TOPIC**      **PAGE**

I.    Procedural Background ............................................................ 1

II.    Factual Background ................................................................. 2

     A.    Mr. Luna's Criminal Conduct and History ..................................... 2

     B.    Mr. Luna's Naturalization Proceedings .......................................... 3

III.    Argument ................................................................................ 4

     A.    Revocation of Naturalization........................................................ 4

     B.    Burden of Proof and Summary Judgment Standard ........................ 5

     C.    Application of the Doctrine of Affirmative Collateral Estoppel ...... 6

     D.    Mr. Luna's Naturalization was Illegally Procured .......................... 10

     E.    Mr. Luna's Naturalization was Procured by Willful
         Misrepresentation and Concealment of a Material Fact ................. 13

         1.    Mr. Luna Misrepresented and Concealed his Commission
             of Possession with Intent to Distribute Marijuana ............... 13

         2.    Mr. Luna's Misrepresentations and Concealment of his
             Commission of Possession with Intent to Distribute
             Marijuana were Willful ....................................................... 15

         3.    Mr. Luna's Commission of the Offense of Possession with
             Intent to Distribute Marijuana was Material ....................... 16

         4.    Mr. Luna Procured his Naturalization by Misrepresenting
             and Concealing the Fact that he Committed Possession with
             Intent to Distribute Marijuana ............................................ 19

IV.    Conclusion ............................................................................. 20

Table of Contents

## TABLE OF CITATIONS
## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

**AUTHORITY**                                                          **PAGE(S)**

<u>CASES</u>

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) .............................. 5, 6

<u>Armstrong v. City of Dallas</u>, 997 F.2d 62 (5th Cir. 1993) ........................... 6

<u>Beck v. Texas State Bd. of Dental Examiners</u>, 204 F.3d 629
    (5th Cir. 2000) ...................................................................... 5

<u>Corrado v. United States</u>, 227 F.2d 780 (6th Cir. 1955) ............................ 18

<u>Emich Motor Corp. v. General Motors Corp.</u>, 340 U.S. 558 (1951) .......... 7

<u>Espinoza-Espinoza v. I.N.S.</u>, 554 F.2d 921 (9th Cir. 1977) ........................ 15

<u>Fedorenko v. United States</u>, 449 U.S. 490 (1981) ..................................... 4, 5, 13

<u>Forbes v. I.N.S.</u>, 48 F.3d 439 (9th Cir. 1995) ............................................. 15

<u>Green v. Amerada Hess Corp.</u>, 707 F.2d 201 (5th Cir. 1983) .................... 6, 7, 9

<u>Hyman v. Regenstein</u>, 258 F.2d 502 (5th Cir. 1958) .................................. 7

<u>In re Petition of Haniatakis</u>, 376 F.2d 728 (3d Cir. 1967) .......................... 17

<u>In the Matter of Raiford</u>, 695 F.2d 521 (11th Cir. 1983) ............................. 7

<u>Johnson v. United States</u>, 576 F.2d 606 (5th Cir. 1978) ............................. 7

<u>Kungys v. United States</u>, 485 U.S. 759 (1988) ........................................... 4, 13, 16, 18, 19, 20

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Co.</u>, 475 U.S. 574 (1986) ...... 6

<u>Matter of Khourn</u>, 21 I. & N. Dec. 1041 (BIA 1997) ................................ 12-13, 17

<u>McCarthy v. United States</u>, 394 U.S. 459 (1969) ...................................... 7, 9, 15

<u>Stovall v. Price Waterhouse Co.</u>, 652 F.2d 537 (5th Cir. 1981) ................. 6, 7

| AUTHORITY | PAGE(S) |
|---|---|
| Tomlinson v. Lefkowitz, 334 F.2d 262 (5th Cir. 1964) ............................ | 7 |
| United States v. Koreh, 59 F.3d 431 (3d Cir. 1995) ................................. | 5 |
| United States v. Montalbano, 236 F.2d 757 (3d Cir. 1956) ........................ | 18 |
| United States v. Smallwood, 920 F.2d 1231 (5th Cir. 1991) ...................... | 7 |
| United States v. Stelmokas, 100 F.3d 302 (3d Cir. 1996) .......................... | 16 |
| United States v. Syouf, 1999 WL 689953 (N.D. Ohio 1999) .................... | 16 |
| White v. World Finance of Meridian, Inc., 653 F.2d 147 (5th Cir. 1981) .... | 7 |
| Witter v. I.N.S., 113 F.3d 549 (5th Cir. 1997) ........................................... | 15 |

## STATUTES AND RULES

| | |
|---|---|
| Fed. R. Civ. P. 5 ...................................................................... | 2 |
| Fed. R. Civ. P. 50(a) ................................................................ | 6 |
| Fed. R. Civ. P. 56 .................................................................... | 5 |
| Fed. R. Crim. P. 11(f) .............................................................. | 7 |
| INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B) .................................... | 12 |
| INA § 101(f), 8 U.S.C. § 1101(f) ............................................................ | 11, 12, 19, 20, 17, 18 |
| INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I) ......................... | 12, 18, 19, 20 |
| INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II) ...................... | 12, 18, 19, 20 |
| INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C) ........................................ | 12 |
| INA § 316(e), 8 U.S.C. § 1427(e) ............................................................ | 10 |
| INA § 340(a), 8 U.S.C. § 1451(a) ............................................................ | 1, 4, 10, 13, 20 |

| AUTHORITY | PAGE(S) |
|---|---|
| 18 U.S.C. § 2 ........................................................................ | 2, 6 |
| 21 U.S.C. § 841(a)(1) .......................................................... | 2, 6, 15 |
| 21 U.S.C. § 841(b)(1)(A) ..................................................... | 2, 6 |
| 21 U.S.C. § 846 ................................................................... | 2 |

**CODE OF FEDERAL REGULATIONS**

| | |
|---|---|
| 8 C.F.R. § 316.10 ................................................................ | 12, 17 |
| 8 C.F.R. § 316.10(a)(1) ........................................................ | 11 |
| 8 C.F.R. § 316.10(a)(2) ........................................................ | 11 |
| 8 C.F.R. § 316.10(b)(2)(iv) ................................................... | 11, 17 |
| 8 C.F.R. § 316.10(b)(3)(iii) .................................................. | 12 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. B 01-115 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SERVANDO LUNA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I.    PROCEDURAL BACKGROUND

This is an action under section 340(a) of the Immigration and Nationality Act ("INA"), 8

U.S.C. § 1451(a), to revoke and set aside the order of naturalization of Servando Luna and to

cancel his Certificate of Naturalization, Number 22014670.

On June 28, 2001, the United States filed a Complaint to revoke Servando Luna's

naturalized citizenship on the grounds that it was procured illegally and by misrepresentation and

concealment of material facts. The affidavit of Janette Martinez, an officer of the Immigration

and Naturalization Service ("INS"), showing good cause for the action was appended to the

complaint. Mr. Luna was personally served with the Complaint and Summons on July 3, 2001.

On August 17, 2001, Mr. Luna filed an answer in response to the United States' complaint.

On April 24, 2002, the United States filed Plaintiff's First Amended Complaint to revoke

Servando Luna's naturalized citizenship on the grounds that it was procured illegally and by

willful misrepresentation and concealment of material facts.  The affidavit of Janette Martinez, an officer of the INS, showing good cause for the action was appended to the amended complaint. Mr. Luna was served with the amended complaint through his attorney by first class mail.  See Fed. R. Civ. P. 5 (permitting service by mail).  Mr. Luna filed no answer to the amended complaint.

## II.     FACTUAL BACKGROUND

### A.     Mr. Luna's Criminal Conduct and History

Mr. Luna was arrested on February 21, 1996, for Conspiracy to Possess with Intent to Distribute Over 1000 Kilograms of Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and for Possession with Intent to Distribute Approximately 250 Kilograms of Marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2.  See Criminal Complaint, dated February 21, 1996, attached hereto as Exhibit 1; see also United States Customs Service Report of Investigation, dated April 8, 1996, attached hereto as Exhibit 2, at p. 4; Deposition of Servando Luna, March 28, 2002, portions of which are attached hereto as Exhibit 3, at p. 49:14-18. He was indicted for these offenses on March 13, 1996.  See  Indictment, dated March 13, 1996, attached hereto as Exhibit 4.  On May 2, 1996, Mr. Luna pled guilty to Count II of the Indictment - Possession with Intent to Distribute Approximately 250 Kilograms of Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2, and was convicted for this offense on July 24, 1996.  See Ex. 4; see also Judgment in a Criminal Case, dated July 24, 1996, attached hereto as Exhibit 5; Transcript of Rearraignment and Sentencing Proceedings, dated May 2, 1996, July 15, 1996, attached hereto as Exhibit 6.  According to the indictment, Mr. Luna committed the crime of possession with intent to distribute from January 1,

1995, through April 26, 1995. Exs. 4-5; see also Ex. 6 at pp. 13:8-25, 14:1-25. On July 24, 1996, based on his conviction for Possession with Intent to Distribute Approximately 250 Kilograms of Marijuana, Mr. Luna was sentenced to 37 months imprisonment in the United States Bureau of Prisons, to be followed by supervised release for a term of four years. See Ex. 5.

**B.    Mr. Luna's Naturalization Proceedings**

On December 21, 1994, Mr. Luna filed with the INS, an Application for Naturalization, INS Form N-400. See Servando Luna's Application for Naturalization, INS Form N-400, attached hereto as Exhibit 7. Part 7, Question 15(a) of the application asks: "Have you ever: knowingly committed any crime for which you have not been arrested?" See id. at p.3. On his application, Mr. Luna answered "No" to that question. Id. Prior to filing his application with the INS, on December 16, 1994, Mr. Luna signed his application under penalty of perjury, thereby swearing or affirming that the contents of the application were true and correct. Id. at p. 4.

On October 26, 1995, Jose Armando Farias, an officer of the INS, interviewed Mr. Luna regarding the contents of his naturalization application. See Declaration of Jose Armando Farias, attached here to as Exhibit 8, at ¶ 2; see also Ex. 7. At the beginning of this interview, Officer Farias placed Mr. Luna under oath. Ex. 8 at ¶ 3. During this interview, Mr. Farias asked Mr. Luna, in Spanish, if he had ever committed a crime for which he had not been arrested. Ex. 8 at ¶ 5; see also Ex. 7 at p. 3. Mr. Farias also asked Mr. Luna, in Spanish, if he had ever been arrested or detained for any reason by law enforcement. Id. Mr. Luna testified that he had been arrested once, for Driving While Intoxicated in 1984, but testified that he had never committed a crime for which he had not been arrested. Ex. 8 at ¶¶ 5-8; see also Exhibit 7 at p. 3. At the end of that interview, Mr. Luna signed a sworn statement that the contents of his application were true. Ex.

United States v. Luna,
Mem. In Support of SJ, Page - 3

7 at p. 4; Ex. 8 at ¶ 7.  On October 26, 1995, based upon Mr. Luna's answers to the questions on

the application and his testimony given during his naturalization interview, the INS approved Mr.

Luna's application for naturalization.  Ex. 8 at ¶ 2; <u>see also</u> Ex. 7.  Mr. Luna took the oath of

citizenship and became a naturalized citizen on December 4, 1995.  <u>See</u> Certificate of

Naturalization, attached hereto as Exhibit 9.

III.·   **ARGUMENT**

    A.    **Revocation of Naturalization**

    Section 340(a) of the INA, 8 U.S.C. § 1451(a), provides for the revocation of an order

admitting one to citizenship and cancellation of the certificate of naturalization, if such order and

certificate of naturalization were (1) illegally procured,  or (2) procured by concealment of

material fact or by willful misrepresentation.  Naturalization is "illegally procured" when the

individual was statutorily ineligible for naturalization before and including the time he became a

naturalized citizen.  <u>See</u> <u>Fedorenko v. United States</u>, 449 U.S. 490, 506 (1981).  Naturalization is

also subject to revocation when procured by concealment or misrepresentations "that are both

willful and material."  <u>Kungys v. United States</u>, 485 U.S. 759, 767 (1988) (citing <u>Fedorenko</u>, 449

U.S. at 507, n.28).  The United States is entitled to summary judgment and a judgment of

denaturalization against Mr. Luna on two separate and independent grounds -- one involving

illegal procurement and one involving material misrepresentation.  Judgment in the government's

favor on either ground mandates revocation of Mr. Luna's naturalization and provides complete

relief to the United States.[1]

---

    [1] In addition to the two counts raised in this motion and memorandum for summary
judgment, the Complaint alleges illegal procurement due to false testimony, pursuant to 8 U.S.C.

**B.     Burden of Proof and Summary Judgment Standard**

To prevail in a denaturalization proceeding, the government must prove its case by clear, convincing, and unequivocal evidence, and leave no issue in doubt. <u>Fedorenko</u>, 449 U.S. at 505. At the same time, the statute *requires* the revocation of United States citizenship if it was illegally procured or procured by concealment of material fact or by willful misrepresentation. <u>Id.</u> at 493. Once a district court determines that the government has met its burden of proving that a naturalized citizen obtained his citizenship illegally or by concealment of material fact or by willful misrepresentation, it has no discretion to excuse the conduct, and must enter a judgment of denaturalization. <u>Id.</u> at 517.

A motion for summary judgment must be granted when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56; <u>Beck v. Texas State Bd. of Dental Examiners</u>, 204 F.3d 629, 633 (5th Cir. 2000). Once the moving party has carried its summary judgment burden, the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Despite the government's heavy burden of proof in a denaturalization case, summary judgment is appropriate when no genuine triable issue of fact exists. <u>See United States v. Koreh</u>, 59 F.3d 431 (3d Cir. 1995).

A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury

---

§§ 1451(a), 1427(a)(3), 1101(f)(6). The fact that the false testimony count has not been raised in this motion or memorandum for summary judgment should not be viewed as any indication that the United States has abandoned this basis for denaturalization. To the contrary, in the event that this action proceeds to trial, the United States expects to pursue all counts of its complaint, including Mr. Luna's illegal procurement due to false testimony.

United States v. Luna,
Mem. In Support of SJ, Page - 5

could return a verdict in favor of the nonmoving party. <u>Anderson</u>, 477 U.S. at 248. This

standard is the same as that applied in a directed verdict motion under Fed. R. Civ. P. 50(a),

where the court inquires whether reasonable minds may differ as to the verdict. <u>Id.</u> at 250. There

is no "genuine issue for trial" where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Co.</u>, 475 U.S.

574, 586 (1986). A summary judgment opponent must do more than show that there is some

metaphysical doubt as to the material facts. <u>Id.</u> at 586. Where critical evidence is so weak or

tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or

where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment

is appropriate. <u>See</u> <u>Armstrong v. City of Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1993).

> **C.    Application of the Doctrine of Affirmative Collateral Estoppel Establishes that, as a Matter of Law, Mr. Luna Committed the Crime of Possession with Intent to Distribute Marijuana Between January 1, 1995, and April 26, 1995.**

By application of the doctrine of affirmative collateral estoppel, the United States

establishes that, as a matter of law, Mr. Luna committed the crime of possession with intent to

distribute marijuana between January 1, 1995, and April 26, 1995. In a prior criminal proceeding

in the United States District Court for the Southern District of Texas, before the Honorable

Filemon Vela, Mr. Luna pled guilty to possession with intent to distribute marijuana, in violation

of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2, from January 1, 1995, through April

26, 1995. Mr. Luna's plea affirmatively establishes that he committed the crime of possession

with intent to distribute marijuana from January 1, 1995, through April 26, 1995.

Federal law determines the collateral estoppel effect given to a prior decision of a federal

tribunal. <u>Green v. Amerada Hess Corp.</u>, 707 F.2d 201, 205 (5th Cir. 1983); <u>Stovall v. Price</u>

Waterhouse Co., 652 F.2d 537, 540-41 (5th Cir. 1981). Under federal law, the three requirements for the application of collateral estoppel are (1) that the issue to be precluded be identical to the one involved in the prior action, (2) that the issue in the prior action have been actually litigated, and (3) that the determination of the issue in the prior action have been a necessary part of the judgment in that action. Green, 707 F.2d at 205 (citing White v. World Finance of Meridian, Inc., 653 F.2d 147, 151 (5th Cir. 1981)); see also Stovall, 652 F.2d 537, 540 (citing Johnson v. United States, 576 F.2d 606, 615 (5th Cir. 1978)).

It is a general principal of collateral estoppel that "a fact established in an earlier suit is conclusively established between the parties and their privies, provided it was necessary to the result in the first suit." Tomlinson v. Lefkowitz, 334 F.2d 262, 264 (5th Cir. 1964) (citing Hyman v. Regenstein, 258 F.2d 502, 510 (5th Cir. 1958)). Moreover, "it is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding." Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568-69 (1951); see also United States v. Thomas, 709 F.2d 968, 972 (5th Cir. 1983); Piper v. United States, 392 F.2d 462, 464-65 (5th Cir. 1968); Tomlinson, 334 F.2d at 264-65. Because there exists a higher standard of proof and greater procedural protections in a criminal proceeding, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action. Thomas, 709 F.2d at 972 (citing In the Matter of Raiford, 695 F.2d 521, 523 (11th Cir. 1983)).

Furthermore, a guilty plea is an admission of all the elements of a formal criminal charge. See McCarthy v. United States, 394 U.S. 459, 466 (1969); see also United States v. Smallwood, 920 F.2d 1231, 1240 (5th Cir. 1991). A federal court cannot enter judgment upon the plea unless it determines that a factual basis exists for it. See Fed.R.Crim.P. 11(f).

Mr. Luna pled guilty to possession with intent to distribute marijuana on May 2, 1996,

and, after having had the indictment read to him by the United States Attorney charging him with

knowingly and intentionally possessing with intent to distribute approximately 250 kilograms of

marijuana between January 1, 1995, and April 26, 1995, admitted the following to United States

District Judge Filemon Vela:

MR. MOSBACKER [sic]: How do you plead to Count 2?  Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty because you are guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody promised you anything, threatened you or forced you?

THE DEFENDANT: No, sir.

THE COURT: Knowing everything that can happen to you , do you still want to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Listen very carefully.  What are the factual allegations in this case?

MR. MOSBACKER: Your Honor, the facts would show between January 1, 1995, and April 26, 1995, this defendant reached an agreement with a person by the name of Ramiro Santoscoy from Mexico.  Mr. Santoscoy provided him with 250 kilograms of marijuana which were imported into the U.S.  Later on a portion of that load, 40 pounds, was seized in a vehicle belonging to Mr. Luna on April 26 of 1995.

THE COURT: How many pounds?

MR. MOSBACKER: 40 pounds was seized but there was a total of 250 kilograms that were originally possessed by Mr. Luna.

THE COURT: Is that true?

THE DEFENDANT: Yes.

THE COURT: You admit it?

THE DEFENDANT: Yes.

THE COURT: That you were involved with 250 kilos? About 550 pounds, isn't it?

MR. MOSBACKER: Yes, Your Honor.

THE COURT: You admit that?

THE DEFENDANT: Yes, sir.

......

THE COURT: Is all of that true?

THE DEFENDANT: It is true.

Ex. 6 at pp. 13:3-25, 14:1-25, 15:1-12.

Whether Mr. Luna committed the crime of possession with intent to distribute marijuana from January 1, 1995, through April 26, 1995, is or was: 1) the identical issue in both his prior criminal proceeding and the instant civil proceeding; 2) actually litigated through Mr. Luna's guilty plea; and 3) an issue necessary to the prior criminal judgment. Thus, the doctrine of collateral estoppel applies in this subsequent civil proceeding to establish Mr. Luna's commission of this offense. See Green, 707 F.2d at 205.

When Mr. Luna pled guilty to possession with intent to distribute marijuana, he admitted to the elements of 21 U.S.C. § 841(a)(1) (1996), which provided that "it shall be unlawful for any person knowingly or intentionally – to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance." See McCarthy, 394 U.S. at 466.

Further, Mr. Luna was represented by counsel at his plea hearing and testified that he had sufficient time to discuss his case with his attorney and that he was satisfied with his attorney's representation. Ex. 6 at p. 4:15-20; see also Ex. 3 at p. 69:4-5. Moreover, Mr. Luna was placed under oath at his plea hearing and the Court explained to Mr. Luna that, if he did not tell the truth, he would be subjected to the penalties of perjury. Ex. 6 at pp. 3:18-25, 4:1-14; see also Ex. 3 at p. 69:13-24.

Accordingly, through application of the doctrine of affirmative collateral estoppel, the United States establishes, as a matter of law, that Mr. Luna committed the crime of possession with intent to distribute marijuana from January 1, 1995, through April 26, 1995. Mr. Luna cannot raise any genuine issue of material fact regarding the conclusively established fact. As explained hereinafter, as a result of Mr. Luna's commission of this offense, his naturalization was both illegally procured and procured by willful misrepresentation or concealment of a material fact, mandating revocation of his naturalization pursuant to INA section 340(a), 8 U.S.C. § 1451(a).

### D.   Mr. Luna's Naturalization Was Illegally Procured Because He Lacked Good Moral Character As Required For Naturalization.

By committing the crime of possession with intent to distribute marijuana between January 1, 1995, and April 26, 1995, and in the absence of any extenuating circumstances outweighing his adverse criminal conduct, Mr. Luna lacked the good moral character required for naturalization, rendering his naturalization illegally procured and necessitating its revocation pursuant to section 340(a) of the INA, 8 U.S.C. § 1451(a). Section 316(a)(3) of the INA, 8 U.S.C. § 1427(a)(3), provides that no person shall be naturalized unless the person "during all periods referred to in this

subsection has been and still is a person of good moral character." The statutory period for which good moral character is required begins five years prior to the filing of the application for naturalization and continues until the applicant takes the oath of allegiance and becomes a United States citizen. See id.; see also 8 C.F.R. § 316.10(a)(1). Given that Mr. Luna filed his application for naturalization on December 21, 1994 (Ex. 7 at p. 1), and took the oath of allegiance on December 4, 1995 (Ex. 9), the statutory period for which Mr. Luna was required to be a person of good moral character was from December 21, 1989, until December 4, 1995.

Mr. Luna lacked the good moral character required for naturalization; therefore, Mr. Luna illegally procured his naturalization. Although the INA does not define "good moral character," the statute precludes certain individuals from establishing good moral character for a variety of reasons. See INA § 101(f)(1) - (8); 8 U.S.C. § 1101(f)(1) - (8). Although none of these specific provisions apply to preclude a finding of good moral character because Mr. Luna was neither convicted nor did he admit to the essential elements of a preclusive crime prior to naturalization,[2] Mr. Luna's *commission itself* precluded him from establishing good moral character. As provided in section 101(f) of the INA, 8 U.S.C. § 1101(f), the "fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." The Code of Federal Regulations at 8 C.F.R. § 316.10(a)(2) provides that good moral character determinations shall be made "on a case-by-case basis taking into

---

[2] 8 C.F.R. § 316.10(b)(2)(iv) provides that an applicant lacks good moral character if, during the statutory period, he admits the commission of one or more crimes involving moral turpitude which occurred during the statutory period, or admits a violation of any law relating to a controlled substance which occurred during the statutory period, other than simple possession of 30 grams or less of marijuana, even if there was never a formal charge, indictment, arrest, or conviction.

account the elements enumerated in [8 C.F.R. § 316.10 ] and the standards of the average citizen in the community of residence." The Code also provides at 8 C.F.R. § 316.10(b)(3)(iii) that an applicant for naturalization shall be found to lack good moral character unless the applicant establishes extenuating circumstances, if he has committed "unlawful acts that adversely reflect on the applicant's moral character" even if such acts do not otherwise preclude a finding of good moral character.

Unbeknownst to the INS, on or about January 1, 1995, through April 26, 1995, Mr. Luna committed the crime of possession with intent to distribute approximately 250 kilograms of marijuana. See Exs. 4-6. As explained already, through the application of the doctrine affirmative collateral estoppel, Mr. Luna's commission of this crime is established as a matter of law.

Possession with intent to distribute marijuana is a serious offense that directly affects Mr. Luna's ability to establish good moral character, and its commission, in the absence of extenuating circumstances outweighing this crime, would have prevented Mr. Luna from establishing the requisite good moral character even prior to his arrest, indictment or conviction. 8 C.F.R. § 316.10(b)(3)(iii). Possession with intent to distribute marijuana is an aggravated felony crime pursuant to section 101(a)(43)(B) of the INA, 8 U.S.C. § 1101(a)(43)(B), and once convicted of such offense Mr. Luna would have been permanently barred from naturalizing because he would have been precluded from establishing the requisite good moral character. See INA § 101(f)(8). A conviction for this crime also would have precluded Mr. Luna from establishing good moral character because it is a controlled substance offense that is not simple possession of 30 grams or less of marijuana, a controlled substance trafficking offense, and a crime involving moral turpitude. See INA §§ 101(f)(3), 212(a)(i)(I), 212(a)(2)(A)(i)(II), 212(a)(2)(C); see also Matter

of Khourn, 21 I. & N. Dec. 1041, 1047 (BIA 1997).  Mr. Luna's criminal activities adversely

reflect on Mr. Luna's moral character when considered against the standards of the average

citizen in the community in which Mr. Luna resides, and there were no extenuating circumstances

that would be sufficient to mitigate the effect of Mr. Luna's actions on his ability to establish good

moral character.

For the foregoing reasons, Mr. Luna lacked good moral character and, therefore, was

ineligible to naturalize.  As an individual ineligible to naturalize, Mr. Luna illegally procured his

naturalization, and his naturalization must be revoked.  See Fedorenko, 449 U.S. at 506.  Mr.

Luna cannot raise a genuine issue of material fact regarding his lack of good moral character.  The

United States is, therefore, entitled to summary judgment regarding this issue.

### E.    Mr. Luna's Naturalization Was Procured By Willful Misrepresentation And Concealment Of A Material Fact.

Mr. Luna procured his naturalization by willful misrepresentation or concealment of a

material fact.  In addition to illegally procured naturalization, section 340(a) of the INA, 8 U.S.C.

§ 1451(a), provides for the revocation of naturalization that is "procured by concealment of a

material fact or by willful misrepresentation."  There are four requirements for revocation of

naturalization under this provision: (1) the naturalized citizen must have misrepresented or

concealed some fact, (2) the misrepresentation or concealment must have been willful, (3) the fact

must have been material, and (4) the naturalized citizen must have procured citizenship as a result

of the misrepresentation or concealment.  Kungys, 485 U.S. at 767.

### 1.    Mr. Luna Misrepresented and Concealed His Commission of Possession with Intent to Distribute Marijuana.

Mr. Luna misrepresented and concealed his commission of possession with intent to

distribute marijuana during the naturalization process. As previously established, as a matter of

law, through application of the doctrine of affirmative collateral estoppel, Mr. Luna committed

the offense of possession with intent to distribute between January 1, 1995, and April 26, 1995.

During Mr. Luna's naturalization interview, INS Officer Farias, as was his invariable practice,

asked Mr. Luna whether he had ever committed a crime for which he had not been arrested. In

fact, Officer Farias asked this question, as well as others, in Mr. Luna's native language of

Spanish. Yet, despite the fact that after filing his application for naturalization, but before his

naturalization interview, Mr. Luna committed the crime of possession with intent to distribute,

Mr. Luna reaffirmed his negative response to Part 7, Question 15(a), representing to Officer

Farias that he had never committed a crime for which he had not been arrested. Further, by

signing his application at the conclusion of the interview, Mr. Luna verified that all the answers,

including the questions regarding his criminal history, as amended during the interview, were true

and correct. See Ex. 8 at ¶ 7; see also Ex. 7 at p. 4. As reflected by Mr. Luna's application and

Officer Farias' notations, the only crime revealed by Mr. Luna was a prior offense for DWI. See

Ex. 8 at ¶¶ 5-8; see also Ex. 7 at p. 3. In fact, at no time prior to his naturalization on December

4, 1995, did Mr. Luna reveal to the INS that he had committed possession with intent to

distribute approximately 250 kilograms of marijuana. See Exs. 7-8; see also Notice of

Naturalization Oath Ceremony, INS Form N-445, attached hereto as Exhibit 10. Accordingly,

during the naturalization process, Mr. Luna misrepresented and concealed his commission of

possession with intent to distribute marijuana.

2.    **Mr. Luna's Misrepresentations and Concealment of His Commission of Possession with Intent to Distribute Marijuana were Willful.**

Mr. Luna's misrepresentations and concealments concerning his criminal history were "willful." A misrepresentation or concealment is willful if it is deliberate and voluntary. Witter v. I.N.S., 113 F.3d 549, 554 (5th Cir. 1997) (interpreting "willful misrepresentation" in the context of deportation); Forbes v. I.N.S., 48 F.3d 439, 442 (9th Cir. 1995) (same); Espinoza-Espinoza v. I.N.S., 554 F.2d 921, 925 (9th Cir. 1977) (same). "Proof of intent to deceive is not required; . . . knowledge of the falsity of the representation is sufficient" to establish a misrepresentation's willfulness under 8 U.S.C. § 1451(a). Witter, 113 F.3d at 554.

Mr. Luna knew that possession of marijuana with intent to distribute was crime. He testified at his deposition as follows:

Q    Now, Mr. Luna, you knew at this time that marijuana was an illegal substance, didn't you?

A    Of course, yes.

Q    And you knew that possession of it was a crime?

A    Of course, yes.

Q    And that selling it was a crime?

A    Correct.

Q    And that transporting marijuana was a crime?

A    Correct.

Ex. 3 at p. 160:11-19. Additionally, Mr. Luna pled guilty to this offense and, thereby, admitted to the elements of the criminal charge, including that he engaged in such conduct knowingly or intentionally. See McCarthy, 394 U.S. at 466; see also 21 U.S.C. § 841(a)(1) (1996) (providing

United States v. Luna,
Mem. In Support of SJ, Page - 15

that "it shall be unlawful for any person knowingly or intentionally – to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance"); Fed.R.Crim.P. 11(f) see also United States v. Syouf, 1999 WL 689953, *3-4 (N.D. Ohio 1999) (omission in a naturalization application that defendant wrote four bad checks in less than five months, one of which was written on an account that was closed, held to be "willful"). As a result, Mr. Luna knew his representations regarding his criminal history were false and misleading; therefore, they were willful.

### 3.    Mr. Luna's Commission of the Offense of Possession with Intent to Distribute Marijuana was Material to his Naturalization.

Mr. Luna's misrepresentation and concealment regarding his commission of the offense of possession with intent to distribute marijuana was material. A misrepresentation or concealment is material if it "was predictably capable of affecting, i.e., had a natural tendency to affect, the official decision." Kungys, 485 U.S. at 771. More specifically, materiality depends upon "whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified [to naturalize]." Id. at 771-72.

Materiality is a legal issue for the court to decide. Id. at 772. Despite this point, because materiality is defined by what would have a natural tendency to influence the decision maker, evidence of the effect that disclosure of the adverse information would have had on the INS's decision is relevant and can be helpful to the court's decision. Thus, in cases involving no clear statutorily disqualifying offense, "evidence of whether or not the ... official's decision would have been different if [INS] knew the truth might be helpful to the court in deciding a materiality issue." United States v. Stelmokas, 100 F.3d 302, 317-18 (3d Cir. 1996). Accordingly, the

United States submits the accompanying Declaration of Jose Armando Farias at Exhibit 8,

regarding the effect that disclosure by Mr. Luna would have had on the INS's decision.

Mr. Luna's possession with intent to distribute approximately 250 kilograms of marijuana

from January 1, 1995, through April 26, 1995, was material to his application for naturalization

because it would have raised an issue regarding whether Mr. Luna met the "good moral

character" requirement for naturalization. See In re Petition of Haniatakis, 376 F.2d 728, 730 (3d

Cir. 1967) ("Having asked a question which it deems significant to determine the qualifications of

one seeking citizenship, the government is entitled to full disclosure.") As discussed supra,

section 101(f) of the INA, 8 U.S.C. § 1101(f), provides that anyone falling into one or more of

eight categories therein is statutorily barred from establishing "good moral character." See also 8

C.F.R. § 316.10 (providing for additional bars to a finding of good moral character). Mr. Luna

committed a drug crime for which he was eventually convicted, that would have permanently

barred him from naturalization upon conviction, and any admission to this offense would have

caused the INS to deny Mr. Luna's application for naturalization. See Ex. 8 at ¶ 6; see also INA

§§ 101(f)(3), 101(f)(8), 8 U.S.C. §§ 1101(f)(3), 1101(f)(8); Matter of Khourn, 21 I. & N. Dec.

1041 (BIA 1997).

As also discussed supra, an individual cannot establish good moral character by simply not

falling into one of the presumptive bar categories. Section 101(f) of the INA, 8 U.S.C. § 1101(f),

provides as follows: "The fact that any person is not within any of the foregoing classes shall not

preclude a finding that for other reasons such person is or was not of good moral character."

Further, 8 C.F.R. § 316.10(b)(2)(iv) provides that an applicant who admits committing one or

more crimes involving moral turpitude during the statutory period or an offense relating to a

controlled substance that is not possession of 30 grams or less of marijuana, even where there was never a formal charge, indictment, arrest, or conviction, shall be found to lack good moral character. Thus, the fact that Mr. Luna had not yet been convicted for his drug offense, in which case he would have been statutorily barred from naturalization, does not mean that the commission of this offense was immaterial. Rather, if Mr. Luna had disclosed, rather than misrepresenting and concealing his commission of possession with intent to distribute marijuana, the INS would not have approved his naturalization application. Ex. 8 at ¶ 6; see also INA §§ 101(f)(3), 212(a)(2)(A)(i)(I), 212(a)(2)(A)(i)(II), 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I), 1182(a)(2)(A)(i)(II) (person lacks good moral character if they admit the commission of, during the statutory period, a crime involving moral turpitude or a violation of any law relating to a controlled substance, except for possession of 30 grams or less of marijuana).

There is no requirement that the government establish "but for" causation, i.e., that but for defendant's misrepresentation or concealment, he would not have been naturalized. Kungys, 485 U.S. at 776; see also United States v. Montalbano, 236 F.2d 757, 759 (3d Cir. 1956) ("If the government thinks it important enough to ask a question, which it has authority to ask, the answer cannot be considered immaterial and meaningless. That the answer may not lead to the refusal of citizenship is not the only consideration. The government is entitled to know all the facts which it requires."); Corrado v. United States, 227 F.2d 780, 784 (6th Cir. 1955) ("the issue is not whether naturalization would have been denied appellant had he revealed his numerous arrests, but whether, by his false answers, the Government was denied the opportunity of investigating the moral character of appellant and the facts relating to his eligibility for citizenship"). Yet in this case, the United States has actually established that *but for* Mr. Luna's misrepresentations and

concealments, he would have been denied naturalization. The INS would not have approved his

naturalization application if Mr. Luna had revealed that he had committed possession with intent

to distribute approximately 250 kilograms of marijuana between January 1, 1995, and April 26,

1995. Ex. 8 at ¶ 6. Because he was eventually convicted of possession with intent to distribute

marijuana, which permanently and statutorily precludes naturalization, his application ultimately

would have been denied. INA § 101(f)(8), 8 U.S.C. § 1101(f)(8). In addition, if Mr. Luna had

admitted his commission of this offense during the statutory period, he would have been

statutorily ineligible to naturalize. See INA §§ 101(f)(3), 212(a)(2)(A)(i)(I), 212(a)(2)(A)(i)(II);

8 U.S.C. §§ 1101(f)(3), 1182(a)(20(A)(i)(I), 1182(a)(2)(A)(i)(II). Accordingly, Mr. Luna's

commission of possession with intent to distribute marijuana from January 1, 1995 and April 26,

1995, was a material fact.

### 4. Mr. Luna Procured his Naturalization by Misrepresenting and Concealing the Fact that he Committed the Offense of Possession with Intent to Distribute Marijuana.

The final element that the United States must prove is that Mr. Luna procured his

naturalization as a result of the misrepresentation or concealment of material facts. Once it is

shown that any fact misrepresented or concealed by the defendant was material and that such fact

raises a fair inference that a disqualifying fact existed at the time of naturalization, which has been

established in this case, the defendant is presumed to have procured his naturalization on account

of the misrepresentations and concealment. Kungys, 485 U.S. at 783 (Brennan, J., concurring).

Thus, Mr. Luna's misrepresentations and concealments satisfy the "procurement" prong of the

material misrepresentation test under any of the standards discussed by the Court in Kungys. See

Kungys, 485 U.S. at 773 (opinion of Scalia, J.); id. at 783-84 (opinion of Brennan, J.); id. at 787-

United States v. Luna,
Mem. In Support of SJ, Page - 19

89 (opinion of Stevens, J.); see also Ex. 8. Mr. Luna can rebut this presumption only by proving

that he actually met the eligibility requirement to which the misrepresented fact pertains. See

Kungys, 485 U.S. at 777. In other words, Mr. Luna must establish that despite his commission of

possession with intent to distribute 250 kilograms of marijuana, which led to a preclusive

conviction, he was a person of good moral character.

Although it is not required, the United States has established that, but for Mr. Luna's

misrepresentations and concealments, he would have been denied naturalization. See Ex. 8; see

also INA §§ 101(f)(3), 212(a)(2)(A)(i)(I), 212(a)(2)(A)(i)(II); 8 U.S.C. §§ 1101(f)(3),

1182(a)(2)(A)(i)(I),1182 (a)(2)(A)(i)(II). In such case, there is clearly a fair inference that a

disqualifying fact existed at the time of Mr. Luna's naturalization and that he was ineligible to

naturalize. Because Mr. Luna procured his naturalization by willful misrepresentation and

concealment of material facts, his naturalization must be revoked, as provided by section 340(a)

of the INA, 8 U.S.C. § 1451(a). Mr. Luna cannot raise a genuine issue of material fact regarding

the fact that he procured his naturalization by willful misrepresentation and concealment of a

material fact. The United States, therefore, is entitled to summary judgment.

## IV.    CONCLUSION

Mr. Luna procured his naturalization illegally because his commission of possession with

intent to distribute 250 kilograms of marijuana precluded him from establishing the good moral

character required for naturalization. Further, Mr. Luna procured his naturalization by willfully

misrepresenting and concealing the material fact of his commission of possession with intent to

distribute marijuana. There is no genuine issue of material fact regarding Mr. Luna's procurement

of naturalization illegally and by willful misrepresentation or concealment of a material fact.

United States v. Luna,
Mem. In Support of SJ, Page - 20

Judgment on either illegal procurement or procurement through willful misrepresentation or

concealment of a material fact mandates revocation of Mr. Luna's naturalization and provides

complete relief to plaintiff.  For the foregoing reasons, therefore, the Court should grant the

United States' motion for summary judgment and enter an order revoking and setting aside the

Attorney General's order admitting Mr. Luna to United States citizenship, canceling his certificate

of naturalization, and ordering him to surrender and deliver his certificate and other indicia of

United States citizenship to the Attorney General immediately.


Respectfully submitted,

MICHAEL SHELBY
United States Attorney
KEITH WYATT
Chief, Civil Division
LISA PUTNAM
Special Assistant United States Attorney
Immigration & Naturalization Service
P.O. Box 1711
Harlingen, Texas 78551

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division
RICHARD M. EVANS
Assistant Director
MICHELLE SLACK
Trial Attorney
Office of Immigration Litigation
U.S. Dept. of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 616-9340


ANGELA A. CRIDER, Attorney in Charge
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
c/o Immigration and Naturalization Service
P.O. Box 670049
Houston, Texas 77267-0049
Telephone: (281) 774-4731
Facsimile: (281) 774-5996
TX Bar No. 00790530
Southern District of Texas No. 26859

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Plaintiff's Memorandum in Support of Its Motion for Summary Judgment was mailed by first class mail to Defendant's attorney, Philip Cowen, at 500 East Levee, Brownsville, Texas 78520 on this the 1st day of August, 2002.

Angela A. Crider, Trial Attorney
Primary Counsel for Plaintiff,
United States of America

# APPENDIX
# EXHIBITS
## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

**EXHIBIT**                                                                 **EXHIBIT TAB**

Criminal Complaint, dated February 21, 1996 ........................................... 1

United States Customs Service Report of Investigation,
        dated April 8, 1996 ....................................................................... 2

Oral Deposition of Servando Luna, dated March 28, 2002
        (Selected portions) ....................................................................... 3

Indictment, dated March 13, 1996 ............................................................. 4

Judgment in a Criminal Case, dated July 24, 1996 .................................... 5

Transcript of Rearraignment and Sentencing Proceedings,
        dated May 2, 1996, and July 15, 1996 ........................................... 6

Servando Luna's Application for Naturalization, INS Form N-400 ............ 7

Declaration of Jose Armando Farias ........................................................... 8

Servando Luna's Certificate of Naturalization, No. 22014670 ................... 9

Servando Luna's Notice of Naturalization Oath Ceremony,
        INS Form N-445 ........................................................................... 10

# EXHIBIT 1

1 (Rev. 5/85) Criminal Complaint

*approved*
*2/4/96*

# United States District Court

B-96-077

United States District Court
Southern District of Texas
FILED

Southern _____ **DISTRICT OF** _____ Texas

FEB 21 1996

### UNITED STATES OF AMERICA
### V.

Servando LUNA

Michael N. Milby, Clerk

## CRIMINAL COMPLAINT

CASE NUMBER: B-96-324-M

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of r

wledge and belief. On or about January/1993 thru April/1995 Cameron _____ county, in t

uthern _____ District of _____ Texas _____ defendant(s) did, (Track Statutory Language of Offense)

ngly and intentionally conspirte and agree together, and with other persons known
r unknown to knowningly and intentionally possess with intent to distribute a
ity exceeding 1000 kilograms of marijuana, a Schedule I controlled substance.

olation of Title __21__ United States Code, Section(s) __846, 952, 841__

her state that I am a(n) __Special Agent__ and that this complaint is based on the followi
Official Title

ATTACHED.

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, CLERK
By _____ Deputy Clerk

nued on the attached sheet and made a part hereof:   ☐ Yes   ☐ No

_____
Signature of Complainant

n to before me and subscribed in my presence,

uary 21, 1996 _____   at   Brownsville, Texas
City and State

# EXHIBIT 2



**LAW ENFORCEMENT SENSITIVE**
**U.S. Customs Service**

1300 Pennsylvania Avenue, N.W.    Washington, D.C. 20229

MAR 1 2 2002

DIS 4-01 OI:APP:ID
02-CC-0067 SBP

Angela A. Crider, Esq.
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 670049
Houston, Texas 77267

Dear Ms. Crider:

This is in reference to your letters dated February 21 and February 27, 2002 (with enclosures), wherein you requested access to Customs law enforcement documents relating to Mr. Servando Luna, DOB: 12/23/1945, the subject of a civil lawsuit entitled <u>United States v. Servando Luna</u>, Civil Action No. B 01-115.  The government is bringing this action against Mr. Luna in the U.S. District Court for the Southern District of Texas, Brownsville Division, in an attempt to revoke his citizenship for lying about his involvement in drug activities at the time he filed a naturalization application.  The evidence necessary to substantiate those falsehoods is contained in our records.

Specifically, you have requested copies of four Reports of Investigation (ROI's), under three separate Customs case numbers, as follows: Report No.2, Case No. BV02BR94BV0018; Report No. 3, same case; Report No. 5, Case No. UO02BR94BV0018, and Report No. 6, Case No. BV13MR93BV0093.  You have also indicated that you propose to disclose these documents to the defendant in response to a standing discovery request in the above captioned matter, and to utilize them as exhibits at trial.

In light of the above, I hereby authorize you to receive the enclosed copies of the four ROI's in question in redacted form (items such as source numbers and program codes have been deleted).  We have preliminarily agreed to leave in third party names and certain investigative facts relating to those third parties, in order for you to examine these documents. **However, these documents may only be disclosed in their current form to the defendant and/or his attorney pursuant to a court order, as**

## LAW ENFORCEMENT SENSITIVE

- 2 -

**required by Subsection (b)(11) of the Privacy Act (5 U.S.C. 552a(b)(11)), since the records in question have been retrieved from a System of Records as published in the Federal Register under Treasury/CS .244, Treasury Enforcement Communications System (TECS) and Treasury/CS .129, Investigations Record System. Please be advised that none of the material enclosed herein may be reproduced or provided to anyone outside the Department of Justice without prior authorization of this office. We obviously have no objection to showing the documents in question (clean or redacted) to the Federal District Judge in this case, should he desire to examine them in camera.**

*In addition, notwithstanding any "(b)(11)" blanket order which may be issued by the court in this matter, we still expect your office to support and seek, in coordination with our Associate Chief Counsel in Houston, the appropriate protective order necessary to cover sensitive law enforcement information contained in the four ROI's in question, which will prohibit the defendant and/or his attorney from disclosing to third parties any information contained in these reports, and requires the defendant and/or his attorney to return or destroy such documents no later than 60 days following conclusion of the case.*

Should you have any questions regarding this matter, please feel free to contact Ms. Gloria L. Marshall, Director, Information Disclosure, at (202) 927-0970.

Sincerely,

John C. Varrone
Assistant Commissioner
Office of Investigations

Enclosures

CC: Morris C. ("Chris") Ludtke
Deputy Associate Chief Counsel
Houston, Texas

Special Agent in Charge
San Antonio, Texas

O F F I C I A L   U S E   O N L Y

| | |
|---|---|
| DEPARTMENT OF THE TREASURY<br>UNITED STATES CUSTOMS SERVICE | 1. TECS ACCESS CODE ▣ |
| | 2. PAGE    1 |
| E P O R T   O F   I N V E S T I G A T I O N | 3. CASE NUMBER BV02BR94BV0018 |

ITLE: JOSE GUADALUPE CANTU-RAMIREZ

ASE STATUS:    INTERIM RPT

| EPORT DATE | 7. DATE ASSIGNED | 8. CLASS | 9. PROGRAM CODE | 10. REPORT NO. |
|---|---|---|---|---|
| 040896 | 082994 | 1 | ▣ | 003 |

RELATED CASE NUMBERS:    FM13MR94BV0018

COLLATERAL REQ:

TYPE OF REPORT:
NVESTIGATIVE FINDINGS /  OTHER

C: INDICTMENTS/ARRESTS/CONVICTIONS/COOPERATION OF DEFENDENTS

SYNOPSIS:
  This investigation initially targeted the Jose Guadalupe
'U-Ramirez, et al. narcotics smuggling organization.
·stigation has revealed Jose Luis REYES is the principal in
organization that delivered 561.8 pounds of marijuana to
.V Agents who subsequently conducted a successful controlled
very to the RACFM area.

  During November of 1995 five criminal complaints were filed
he organization members.  All five, plus REYES and others,
 arrested, indicted and convicted.  Cooperating defendants
ided information which resulted in the arrest, indictment and
iction of the Mexican source of supply and the arrest of
ando LUNA based on a complaint.  Investigation continues in
rts to identify and prosecute additional co-conspirators.

| DISTRIBUTION:<br>V SACSA RACFM | 16. SIGNATURE: _____ |
|---|---|
| | BATTISTELLI    MICHELE    T  SPECIAL AGENT |
| | 17. APPROVED: _____ |
| | PATRIARCA    JOHN    SENIOR SPEC AGENT |
| | 18. ORIGIN OFFICE: BV   19. TELEPHONE: 210 542 7831 |
| | BROWNSVILLE - RAC |
| | 20. TYPIST: BATTISTELLI |

O F F I C I A L   U S E   O N L Y
DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
S CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
MATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
CE TOGETHER WITH A COPY OF THE DOCUMENT.

```
  .   DEPARTMENT OF THE TREASURY      |1. PAGE    2                     |
      UNITED STATES CUSTOMS SERVICE   |_____|
                                      |2. CASE NUMBER BV02BR94BV0018   |
E P O R T  O F  I N V E S T I G A T I O N  |_____|
      C O N T I N U A T I O N         |3. REPORT NUMBER: 003           |
_____|
```

LS OF INVESTIGATION:


On November 13, 1995 after preparation of five criminal
aints resulting in the issuance of five Federal Arrest
nts this reporting agent executed one said arrest warrant on
nia CAVAZOS.  Inv. Abraham Rodriguez and I successfully
ted CAVAZOS at the Gateway Bridge Port of Entry,
.sville, Texas (SAS 96230100081).  Pursuant to the arrest
.OS was read her rights at which time she waived them and
d to cooperate with the government.


n November 14, 1995 and days that followed Roberto
ENDI, Maria MUNIZ-Reyes, Berta VEGA and Victor LUCIO were
ted without incident (See SASs 96230100083/87/140,
700007, and FM02BR94BV0018002).


Coordinating with the U.S. Attorney's Office Southern
ict of Texas and CAVAZOS' Attorney, I was able to work with
OS in determining who was the supplier of the marijuana.
ding to CAVAZOS, the supplier was a subject named "Ramiro"
Guadalajara, later be identified as Ramiro SANTOSCOY-Del
ɔ.


On November 20, 1995 Virginia Cavazos was debriefed to her
edge concerning Servando LUNA by writer and Inv. Abe
guez, Cameron County Sheriff's Office(CCSO).  Information is
llows;


nia CAVAZOS stated that after a load of which she was
ved with was seized by law enforcement in April of 1995, she
pproached by Servando LUNA who needed transportation
ces for some marijuana that he had received.  LUNA told
ɔS that he had approximately 500 pounds of marijuana.
ɔS indicated that she introduced LUNA to a person known as
ɔ or Lasaro VILLARREAL.  CAVAZOS later indicated that she
pproached by "Coco", aka Maria MUNIZ-Reyes, to go to Florida
eceive the merchandise.  CAVAZOS stated that she did in fact
 Florida with MUNIZ but only to accompany MUNIZ.  CAVAZOS
ated that they marijuana was never sent to Florida and they
ned to Brownsville, Texas.


CAVAZOS stated that she later met with LUNA who stated that
JNA) was tired of waiting for the transporters to move his

                    O F F I C I A L  U S E  O N L Y
DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
5 CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
4ATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
ƆE TOGETHER WITH A COPY OF THE DOCUMENT.

| DEPARTMENT OF THE TREASURY | 1. PAGE   3 |
| UNITED STATES CUSTOMS SERVICE | |
| | 2. CASE NUMBER BV02BR94BV0018 |
| R E P O R T   O F   I N V E S T I G A T I O N | |
| C O N T I N U A T I O N | 3. REPORT NUMBER: 003 |

ijuana that he told them (transporters) to return the
ijuana.  LUNA told CAVAZOS that he (LUNA) gave them
ansporters) a vehicle to put his marijuana in and that the
icle was stopped by the police and the marijuana was seized.

On December 5, 1995 Federal Indictments on Virginia CAVAZOS,
ca VEGA, Jose Luis REYES, Saul CAVAZOS, Maria MUNIZ-Reyes,
erto ARIZMENDI and Victor LUCIO were True Billed.

On December 6, 1995 CAVAZOS made contact with SANTOSCOY and
up a meeting with him and an undercover agent.  This meeting
successful and a vast amount of intelligence was gathered
cerning and confirming his participation in the REYES load
: controlled delivery) and his numerous drug dealings with
vando LUNA and "Coco", the common law wife of LUNA.  This
:ing was video taped at an undercover location.

On December 7, 1995 a criminal complaint was submitted and
irrest warrant was signed for Ramiro SANTOSCOY.  SANTOSCOY was
:sted later in the afternoon without incident (SAS
.0100139).

On February 1, 1996 Roberto ARIZMENDI and Saul CAVAZOS pled
ty to Title 21 USC 841.

On or about February 16, 1996 I approached the attorney for
ro SANTOSCOY and asked the attorney of SANTOSCOY's
ingness to cooperate.  The conversation was successful ending
r with an agreement or cooperation and an attempt at an
rview with SANTOSCOY.

On February 20, 1996 Inv. Abe Rodriguez, CCSO, and writer
rviewed Ramiro SANTOSCOY who stated that he had distributed
juana to several persons in the Brownsville, Texas/Rio Grande
ey  area.  SANTOSCOY stated that two of the persons that he
onally dealt with were Servando LUNA and Maria "Coco" MUNIZ-
s.  SANTOSCOY stated that he had deliver numerous loads of
juana to these subjects during the late part of 1992 through
early part of 1995.  SANTOSCOY stated that the loads during
year of 1993 range from 200-250 kilograms of marijuana every
n and that LUNA would pay him (SANTOSCOY) every fifteen (15)
.  SANTOSCOY stated that he (SANTOSCOY) had met LUNA at
's auto body shop located on Highway 281 in Brownsville,
s.

O F F I C I A L   U S E   O N L Y
DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
RMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
ICE TOGETHER WITH A COPY OF THE DOCUMENT.

| DEPARTMENT OF THE TREASURY UNITED STATES CUSTOMS SERVICE | 1. PAGE    4 |
|---|---|
| | 2. CASE NUMBER BV02BR94BV0018 |
| E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | 3. REPORT NUMBER: 003 |

Checks indicate that Servando LUNA is the owner of a
body shop called LUNA'S AUTO SERVICE, located at the corner
ιghway 281 and 124 Avenida Del Palacio, Brownsville, Texas.

SANTOSCOY stated that his last load of marijuana with LUNA
near the early part of 1995.  SANTOSCOY stated that he had
vered approximately 250 kilos of marijuana to LUNA and that
3ANTOSCOY) was awaiting payment.  SANTOSCOY stated that he
nake contact with LUNA and that LUNA told him (SANTOSCOY)
the load was seized by law enforcement officers.  SANTOSCOY
ιer stated that LUNA told him (SANTOSCOY) that the load had
∍n in one of his (LUNA's) cars which was stopped, loaded with
ιarijuana and that LUNA had also told SANTOSCOY that the car
ιaroon in color.

A check with the Cameron County Sheriff Office indicated
a maroon vehicle bearing Texas tags, LKR46W, registered to a
ιndo LUNA, 124 Avenida del Palacio, Brownsville, Texas was
∶d as a result of an attempted vehicle stop on April 21,
   The vehicle was abandoned and the driver fled on foot, an
∶tory of the vehicle revealed a grey luggage bag with eight
ιundles of marijuana, weighing approximately 40 pounds.

  It should be noted that a statement was made by Servando
stating that he had offered his car to an Alvaro VILLANUEVA
e day that his vehicle was found with the marijuana.

SANTOSCOY stated that this was his last marijuana deal with
.ndo LUNA.

On February 21, 1996 a criminal complaint was written and
·nted to U.S. Magistrate William Black who signed said
aint and a Federal Arrest warrant was issued on Servando
   Said warrant was executed on same date by members of the
. Taskforce and the Brownsville Police Department at LUNA'S
Repair Shop, 124 Avenida del Palacio, Brownsville, Texas.
was arrested without incident.  Seized on site was his maro
·88 Ford, 4-door which was allegedly used in the attempted
·ery of marijuana on April 26, 1995.

On February 22, 1996 Ramiro SANTOSCOY pled guilty to Title
C 841 and is still cooperating with the government.

On February 23, 1996 Berta VEGA and Jose Luis REYES plead
y to Title 21 USC 841.  VEGA is still cooperating with the

                 O F F I C I A L   U S E   O N L Y
DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
S CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
MATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
CE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY | 1. PAGE    5 |
| UNITED STATES CUSTOMS SERVICE | |
| | 2. CASE NUMBER BV02BR94BV0018 |
| E P O R T   O F   I N V E S T I G A T I O N | |
| C O N T I N U A T I O N | 3. REPORT NUMBER: 003 |

:nment.

On February 26, 1996 Maria MUNIZ-Reyes was found guilty as a
lt of a jury trial for two counts of Title 21.

Investigation continues in identifying the recipients of the
juana in Florida and other leads related to Servando LUNA and
a MUNIZ-Reyes.

O F F I C I A L   U S E   O N L Y
DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
S CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
MATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
CE TOGETHER WITH A COPY OF THE DOCUMENT.

# EXHIBIT 3

CERTIFIED COPY    1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B 01-115 |
| | § | |
| SERVANDO LUNA | § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF SERVANDO LUNA

MARCH 28, 2002

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    ORAL DEPOSITION OF SERVANDO LUNA, produced as a witness

at the instance of the PLAINTIFF, and duly sworn, was taken

in the above-styled and numbered cause on the 28TH day of

MARCH, 2002, from 9:40 a.m. to 12:06 p.m. and from 1:38 p.m.

to 5:34 p.m., before JO ANN QUIN, CSR in and for the State of

Texas, reported by oral stenography, THROUGH AN INTERPRETER,

CECILIA TURRENT, at the United States Attorney's Office, 600

East Harrison Street, Suite 201, Brownsville, Cameron County,

Texas, pursuant to the Federal Rules of Civil Procedure and

the provisions stated on the record or attached hereto.

===============================================================
HENNIGH-QUIN COURT REPORTERS
Box 3036, Edinburg, Texas 78540
(956) 383-8887 / Fax 380-2050
Toll Free 1-800-892-6305
===============================================================

CERTIFIED COPY

49

1    know about it.  I have documents, papers, in relation to

2    that, plus the damage that that causes.  And because

3    through the gospel you can reach young people.  That's the

4    way I think as a person.

5        Q    All right.  We'll move on to questions I have with

6    regard to your criminal record.  And I'm going to again

7    repeat that I'm just going to go through the record as it

8    is and what's in the documents, to begin with.

9        A    Correct.

10       Q    And I will give you an opportunity, and, if I

11   don't, I'm sure your attorney will, to tell your version of

12   these events.

13       A    Correct.

14       Q    Okay.  You were arrested for a drug crime; isn't

15   that correct, Mr. Luna?

16       A    It's correct.

17       Q    And when were you arrested?

18       A    I do remember, it was February the 21st of '96.

19       Q    And where were you arrested?

20       A    I was at my work, sitting down there.

21       Q    Can you describe for me what the circumstances of

22   that arrest were?

23       A    Correct.  At my shop there are two big gates.  Two

24   cars came in with several armed men asking for Servando

25   Luna, because since they didn't know me.  And I told them

69

1  your sentencing hearing.  Okay.  Your plea hearing took

2  place on May 2nd, 1996; isn't that correct?

3       A    Correct.

4       Q    And you were represented by counsel, a Mr. Valle?

5       A    Correct.

6       Q    And this plea hearing was before Judge Vela?

7            MR. COWEN:  Vela (pronunciation).

8       Q    Vela.

9       A    Correct.

10      Q    And it was in the Federal Courthouse in

11  Brownsville, Texas?

12      A    Correct.

13      Q    And you were placed under oath before beginning

14  that plea hearing?

15      A    Correct.

16      Q    So you were under an obligation to tell the truth

17  that day?

18      A    Correct.

19      Q    And, in fact, the judge explained to you what that

20  meant?

21      A    Correct.

22      Q    And didn't he, also, explain to you the penalties

23  of perjury?

24      A    Correct.

25      Q    And he explained that that included the

160

1     Q     Okay.  Did you admit that you did this to the
2  probation officer?

3     A     Correct.

4     Q     And why did you tell the probation officer
5  something that wasn't true?

6     A     If it was not because of the agreement that had
7  been given to me.

8     Q     So for the same reason that you made a false
9  statement to the Judge, as well?

10    A     Correct.

11    Q     Now, Mr. Luna, you knew at this time that
12 marijuana was an illegal substance, didn't you?

13    A     Of course, yes.

14    Q     And you knew that possession of it was a crime?

15    A     Of course, yes.

16    Q     And that selling it was a crime?

17    A     Correct.

18    Q     And that transporting marijuana was a crime?

19    A     Correct.

20    Q     Okay.  So in the third sentence, where it says
21 "Further, the Defendant related that he is very much aware
22 that this is an illegal activity and knew that it was wrong
23 to engage in this type of conduct," that is a true
24 statement?

25    A     Correct.

ORIGINAL    169

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA     §
                             §
VS.                          §     CIVIL ACTION NO. B 01-115
                             §
SERVANDO LUNA                §

COURT REPORTER'S CERTIFICATE

RE: DEPOSITION OF SERVANDO LUNA

MARCH 28, 2002

I, JO ANN QUIN, a Certified Shorthand Reporter and

Notary Public in and for the State of Texas, do hereby

certify that the foregoing deposition transcript is a true

record of the testimony given by the witness hereinbefore

named, reported by me by oral stenography, THROUGH AN

INTERPRETER, the said witness having been first duly

cautioned and sworn or affirmed by me.

I further certify that I am neither attorney nor counsel

for, related to, nor employed by any of the parties to the

action in which this testimony was taken.  Further, I am not

a relative or employee of any attorney of record in this

cause, nor do I have a financial interest in the action.

I further certify that the original deposition herein

was delivered to the Counsel for the Defendant, MR. PHILIP T.

COWEN, Law Office of Philip Cowen, 500 East Levee,

Brownsville, Texas, 78520 (956/541-6031), for signature, on

the _5th_ day of _April_, 2002, to be returned directly to

the court reporter herein, JO ANN QUIN, Hennigh-Quin Court

170

Reporters, P.O. Box 3036, Edinburg, Texas, 78540, within

thirty (30) days thereafter, on or before Monday, the  6th

day of  May , 2002.

I further certify that pursuant to information given to

the deposition officer at the time said testimony was taken,

the following includes counsel for all parties of record:

```
FOR THE PLAINTIFF:
     MS. MICHELLE R. SLACK                    (202) 616-9340
     U.S. DEPARTMENT OF JUSTICE
     OFFICE OF IMMIGRATION LITIGATION
     P.O. BOX 878, BEN FRANKLIN STATION
     WASHINGTON, DC 20044
AND
     MS. ANGELA A. CRIDER                     (281) 774-4731
     U.S. DEPARTMENT OF JUSTICE
     OFFICE OF IMMIGRATION LITIGATION
     C/O OFFICE OF THE DISTRICT COUNSEL
     P.O. BOX 670049
     HOUSTON, TEXAS 77267-0049

FOR THE DEFENDANT:
     MR. PHILIP T. COWEN                      (956) 541-6031
     LAW OFFICE OF PHILIP COWEN
     500 EAST LEVEE
     BROWNSVILLE, TEXAS 78520
```

I further certify that a certified copy of this

deposition was delivered to the custodial attorney herein,

Counsel for Plaintiff, MS. ANGELA A. CRIDER, U.S. Department

of Justice; and, FURTHER, that a copy of my certificate was

provided to Counsel for Plaintiff, MR. PHILIP T. COWEN.

TOTAL TRANSCRIPT $   850.00           (WITH INTERPRETER)

TOTAL EXHIBITS    $    16.00

TOTAL COURT COST $   866.00           ORIGINAL

(Due and owing by the Counsel for Plaintiff)

# EXHIBIT 4

171

CERTIFIED to this <u>5th</u> day of <u>April</u>, 2002.

ORIGINAL

JO ANN QUIN
Certified Shorthand Reporter
and Notary Public in and for
The State of Texas
License No. 2342 / 12-31-03
Notary Commission Exp. 02-02-04
Box 3036, Edinburg, TX. 78540
(956) 383-8887 / Fax 380-2050
Toll Free 1-800-892-6305

HENNIGH-QUIN COURT REPORTERS

GJ 5

9600855/am

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 3 1996

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs | § | CRIMINAL NO.  B - 9 6 - 0 7 7 .. |
| | § | |
| SERVANDO LUNA | § | |
| MARIA MUNIZ REYES | § | |

## I N D I C T M E N T

THE GRAND JURY CHARGES:

### COUNT 1

From on or about September 1, 1992, to on or about June 1, 1995, in the

Southern District of Texas, and elsewhere, and within the jurisdiction of the Court,

Defendants

SERVANDO LUNA,
and
MARIA MUNIZ REYES,

did knowingly and intentionally conspire and agree together and with each other and

with persons known and unknown to the Grand Jurors to knowingly and intentionally

possess with intent to distribute a quantity exceeding 1000 kilograms of marihuana,

a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 846, 841(a)(1), and

841(b)(1)(A).

## COUNT 2

From on or about January 1, 1995, to on or about April 26, 1995, in the Southern District of Texas, and elsewhere, and within the jurisdiction of the Court, Defendants

**SERVANDO LUNA,**
and
**MARIA MUNIZ REYES,**

did knowingly and intentionally possess with intent to distribute a quantity exceeding 100 kilograms, that is, approximately 250 kilograms, gross weight, of marihuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
FOREMAN OF THE GRAND JURY

GAYNELLE GRIFFIN JONES
UNITED STATES ATTORNEY


_____
MERVYN M. MOSBACKER
ASSISTANT UNITED STATES ATTORNEY

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, CLERK
By
Deputy Clerk

**2**



# EXHIBIT 5

□ 245B (Rev. 3/95) Sheet 1 - Judgment in a Criminal

United States District Court
Southern District of Texas
FILED
JUL 24 1996
Michael N. Milby, Clerk of Court

# United States District Court
## Southern District of Texas

UNITED STATES OF AMERICA
v.

**SERVANDO LUNA**

### JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number:  **1:96CR00077-001**

Joe Valle

Defendant's Attorney

THE DEFENDANT:

☒ pleaded guilty to count(s)  **2 on May 2, 1996.**

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. § 841 (b)(1)(B) | Possession with intent to distribute approximately 250 kilograms of marihuana. | 04/26/1995 | 2 |

United States District Court
Southern District of Texas
ENTERED
JUL 31 1996

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, CLERK
By _____
Deputy Clerk

Michael N. Milby, Clerk
By Deputy: O. N. Oledon

The defendant is sentenced as provided in pages 2 through  **6**  of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s)  **1** _____ is dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:  **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**

Defendant's Date of Birth:  **10/23/1945**

Defendant's USM No.:  **70622-079**

Defendant's Residence Address:

**248 W. Fronton**

| Brownsville | TX | 78520 |
|---|---|---|

Defendant's Mailing Address:

**248 W. Fronton**

| Brownsville | TX | 78520 |
|---|---|---|

07/15/1996

Date of Imposition of Judgment

Signature of Judicial Officer

**Honorable Filemon B. Vela**

**United States District Judge**

Name & Title of Judicial Officer

07/24/96

Date



(Rev. 3/95) Sheet 2 – Imprisonment

Judgment-Page __2__ of __6__

DEFENDANT:     **SERVANDO LUNA**

CASE NUMBER:     **1:96CR00077-001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for total term of ___37___ **month(s)** _____.

☐ The court makes the following recommendations to the Bureau of Prisons:

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ a.m./p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____

**UNITED STATES MARSHAL**

By _____

Deputy U.S. Marshal

Rev. 3/95) Sheet 3 - Supervised Release

Judgment-Page __3__ of __6__

DEFENDANT:        **SERVANDO LUNA**
CASE NUMBER:      **1:96CR00077-001**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____4_____ year(s) .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

See Special Conditions of Supervision - Sheet    3.01

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

3/95) Sheet 3 - Supervised Release

EFENDANT:       **SERVANDO LUNA**

:ASE NUMBER:    **1:96CR00077-001**

## SPECIAL CONDITIONS OF SUPERVISION

¯he defendant shall participate in a program, inpatient or outpatient, for the treatment of drug and/or alcohol addiction,
lependency or abuse which may include, but not be limited to urine, breath, saliva and skin testing to determine whether the
.efendant has reverted to the use of drugs and/or alcohol.  Further, the defendant shall participate as instructed and as deemed
.ecessary by the probation officer and shall comply with all rules and regulations of the treatment agency until discharged by the
'rogram Director with the approval of the probation officer.  The defendant shall further submit to drug-detection techniques, in
.ddition to those performed by the treatment agency, as directed by the probation officer.  The defendant will incur costs
issociated with such drug/alcohol detection and treatment, based on ability to pay as determined by the probation officer.

The defendant is hereby placed on notice that the court is quite concerned there has been an alarming increase of Driving While
ntoxicated and illicit drug violations by persons sentenced by this court to probation or supervised release.  Such violations are
·riminal offenses which would cause mandatory revocation of Probation/Supervised Release and subject to consequences thereof.

95) Sheet 5, Part A - Criminal Monetary Penalties

Judgment-Page __4__ of __6__

DEFENDANT:    **SERVANDO LUNA**
CASE NUMBER:    **1:96CR00077-001**

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $        50.00 | $ | $ |

☐   If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .    $ _____

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ 0.00 .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐   The interest requirement is waived.

    ☐   The interest requirement is modified as follows:

# RESTITUTION

☐   The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

☐   The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| | | | |

| | **Totals:** | $ _____ | $ _____ |
|---|---|---|---|

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

.. 3/95) Sheet 5, Part B - Criminal Monetary Penalties

Judgment-Page __5__ of __6__

ᴄFENDANT:      **SERVANDO LUNA**

ᴄASE NUMBER:   **1:96CR00077-001**

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; 5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A  ☒  in full immediately; or

B  ☐  $ _____ immediately, balance due (in accordance with C, D, or E); or

C  ☐  not later than _____ ; or

D  ☐  in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E  ☐  in _____ *(e.g. equal, weekly, monthly, quarterly)* installments of $ _____ over a period of _____ year(s) to commence _____ day(s) after the date of this judgment.

The National Fine Center will credit the defendant for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States Courts National Fine Center, Administrative Office of the United States Courts, Washington, DC 20544, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. If the National Fine Center is not operating in this district, all criminal monetary penalty payments are to be made as directed by the court, the probation officer, or the United States attorney.

.v. 3/95) Sheet 6 – Statement of Reasons

Judgment-Page **6** of **6**

DEFENDANT:      **SERVANDO LUNA**
CASE NUMBER:      **1:96CR00077-001**

# STATEMENT OF REASONS

☒  The court adopts the factual findings and guideline application in the presentence report.

## OR

☐  The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level:      ____**21**____

Criminal History Category:      ____**I**____

Imprisonment Range:      ____**37**____ to ____**46**____ months

Supervised Release Range:      ____**3**____ to ____**5**____ years

Fine Range: $ ____**7,500.00**____ to $ ____**2,000,000.00**____

☒  Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

☐  Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐  For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐  Partial restitution is ordered for the following reason(s):

☒  The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☐  The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

☐  The sentence departs from the guideline range:

☐  upon motion of the government, as a result of defendant's substantial assistance.

☐  for the following specific reason(s):

# EXHIBIT 6

1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF TEXAS
2             BROWNSVILLE DIVISION

3

4  UNITED STATES OF AMERICA        {    CAUSE CR-B-96-077

5  VS                             {    BROWNSVILLE, TEXAS
                                   {
6  SERVANDO LUNA                   {    MAY 2, 1996:
                                        JULY 15, 1996

7

8

9     TRANSCRIPT OF REARRAIGNMENT AND SENTENCING PROCEEDINGS

10        BEFORE THE HONORABLE FILEMON B. VELA

11

12

   APPEARANCES:
13
          FOR THE GOVERNMENT:      MR. MERVYN MOSBACKER
14                                 MR. RICARDO LARA
                                   BROWNSVILLE, TEXAS
15

16        FOR THE DEFENDANT:       MR. JOE VALLE
                                   Brownsville, Texas
17

18

19
          COURT REPORTER:         WILLIAM G. HOLLOWAY
20                                Brownsville, Texas

21

22

23

24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
25           TRANSCRIPT PRODUCED BY COMPUTER

2

1    PROCEEDINGS, MAY 2, 1996:

2    [INTERPRETED]

3            THE COURT:  Cause Number B-96-077, United States

4    versus Servando Luna, and B-96-82, United States versus

5    Domingo Santos-Rocha, Tomas Celis Ochoa and Gerardo Aretezan

6    Ochoa.

7            THE COURT:  Servando Luna.

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Domingo Santos-Rocha.

10            THE DEFENDANT:  Yes.

11            THE COURT:  Tomas Ochoa.

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  Gerardo Aretezan Ochoa.

14            You know English?  Any of you know English?

15            [EACH DEFENDANT INDICATING IN THE NEGATIVE]

16            THE COURT:  All right, the court interpreter will

17    always be at your side.  Each one of your attorneys have

18    indicated to me that you now intend to come here and ask to be

19    rearraigned, which simply means having the charges read

20    against you again but that you now intend to give up some very

21    important rights and plead guilty to the charges against you,

22    you don't have to give up any right nor do you have to plead

23    guilty unless you want to, unless you do so voluntarily.  That

24    is why I am here, to make sure nobody persuaded you or talked

25    you into doing something that you do not want to do.

1          You understand that, sir?

2          Mr. Servando Luna?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Mr. Domingo Santos-Rocha?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Mr. Tomas Celis Ochoa?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Mr. Gerardo Aretezan Ochoa?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  All defendants have answered in the

11    affirmative.  The procedure that we will use is the usual one,

12    that we will employ the usual one, which is to the effect I

13    will elicit a response from each individual defendant.  The

14    record will show what that response is.   It is incumbent upon

15    counsel to show that the record is in error.

16         Any objection if we proceed accordingly?

17         [EACH ATTORNEY ANSWERED IN THE AFFIRMATIVE]

18         THE COURT:  The first thing we are going to do is

19    place each one of you under oath.  If you will please raise

20    your right hand.

21         [OATH ADMINISTERED TO EACH DEFENDANT]

22         THE COURT:  The oath each one of you took you

23    subjected yourself to the laws of perjury of this country,

24    which means if at any time during the course of this

25    proceeding, whether today or hereafter, you tell the Judge

1  something that is not true, as a result thereof you can be

2  confined in the penitentiary for five years and in addition

3  you can be fined $250,000.  There can also be imposed against

4  you a Supervised Release Term of not more than three years.

5  What that means is that while that Supervised Release Term is

6  in effect, if you violate any condition of it, then you would

7  be subject to being confined in a jail-type institution for

8  the period of time that the judge gave you or imposed upon you

9  as a Supervised Release Term.  There will have to be imposed

10  against you an assessment of $50.

11          Do you understand that?

12          [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

13          THE COURT:  Each defendant before me has answered in

14  the affirmative.

15          Do each one of you feel like you have had sufficient

16  time to discuss your case with your attorney and are you

17  satisfied with his services?

18          [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

19          THE COURT:  Each defendant before me has answered in

20  the affirmative.

21          If you plead guilty you are going to be giving up so

22  some very important rights, the right that you have to remain

23  silent, because you see as you stand accused you have to

24  disprove nothing in your case.  You have to offer no evidence

25  in your case.  You do not have to testify in your case.  You

1    do not have to answer my question, but if you plead guilty

2    you are going to giving up that right to remain silent.

3          Do you understand that?

4          [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

5          THE COURT:  Each defendant before me has answered in

6    the affirmative.

7          How old are you, Servando Luna?

8          THE DEFENDANT:  51 years old.

9          THE COURT:  Do you read and write?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you know the difference between right

12   and wrong?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Have you ever in your lifetime been in a

15   mental hospital or mental institution?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Have you ever suffered from a mental

18   disorder?

19         THE DEFENDANT:  No, sir.

20         THE COURT:  Have you found him to be competent and

21   able to assist you in the defense of his case?

22         MR. VALLE:  Yes, sir.

23         THE COURT:  Are you satisfied that he understands the

24   nature of the charges against him?

25         MR. VALLE:  Yes, sir.

1           THE COURT:  What count are you going to address?

2           MR. VALLE:  Count 2.

3           THE COURT:  What is it you understand you are being

4    accused of in Count Number 2, Mr. Luna?

5           THE DEFENDANT:  Conspiracy of marijuana.

6           THE COURT:  How much, sir?

7           THE DEFENDANT:  Possession, distribution of 150

8    kilograms.

9           THE COURT:  Well, they make reference to 250

10   kilograms, 250.  You notice that they say you had it to pass

11   it on to somebody else, to distribute?  Did you notice that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  How old are you Domingo Santos-Rocha?

14          [PROCEEDINGS NOT RELATED TO U.S. VS LUNA]

15          THE COURT:  I find that each and everyone of you who

16   stand before me understand what you are accused of, are

17   competent to assist in the defense of your respective case and

18   competent to being arraigned and tried in your respective

19   case.

20          Has there been any plea bargaining in the case of

21   Servando Luna.

22          MR. MOSBACKER:  In return for his plea of guilty to

23   Count Number 2 the United States agrees to dismiss Count

24   Number 1.  We agree that he should be given credit for early

25   acceptance of responsibility; that if he is eligible for the

1  Safety Valve, that he debriefs with the Government, I believe

2  his criminal record would allow him to benefit from the Safety

3  Valve, low end of the guidelines and 5K1.1 departure of

4  one-third off the low end of guidelines, wherever that is

5  calculated, based on his truthful cooperation and agreement to

6  testify if called upon to do so.

7       THE COURT:  Wait a minute.  5K1.  His part will

8  simply debrief on any matters that he has of record regarding

9  this case.

10       MR. MOSBACKER:  Regarding any case.

11       THE COURT:  Any case?

12       MR. MOSBACKER:  Yes, Your Honor.

13       THE COURT:  That he make himself available to

14  testify.

15       MR. MOSBACKER:  That is correct.

16       THE COURT:  Then you will make a motion by which you

17  will not impose -- rather, reduce one-third.

18       MR. MOSBACKER:  That is correct.

19       THE COURT:  No more?

20       MR. MOSBACKER:  Yes, sir.

21       THE COURT:  Is that the agreement?

22       MR. VALLE:  Yes.

23       THE COURT:  Mr. Valle, your attorney, tells me that

24  if you plead guilty to Count Number 2 they are going to ask

25  the Judge to dismiss all the other counts against you; that

1   for Count Number 2 that you be given the benefit of all point

2   in your favor for accepting responsibility as to your conduct

3   if you qualify for what we now know as the Safety Valve, whic

4   is a reduction predicated upon the fact that you've never bee

5   convicted before and some other things.  In addition, if you

6   reveal everything you know about this case truthfully, that

7   then you will be eligible for a reduction; that in addition to

8   that, sir, if you reveal to the law enforcement officers

9   anything that you know and everything you know about this case

10   as well as any other cases to your knowledge, or make yourself

11   available to testify, as the Government would ask you, that

12   then it will -- there will be a motion filed by which your

13   sentence would further be reduced to one-third, to one-third,

14   no more than one-third of any sentence imposed upon you.

15          Is that the way you understand the agreement?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Has anybody promised you anything else?

18          THE DEFENDANT:  No, sir.

19          THE COURT:  All right, what plea agreement, if any,

20   in the case of Domingo Santos-Rocha, Tomas Celis Ochoa and

21   Gerardo Aretezan Ochoa?  Is it the same?

22          [PROCEEDINGS NOT RELATED TO U.S. VS LUNA]

23          THE COURT:  Now, do each and every one of you who

24   stand before me understand that the Judge does not have to do

25   what's called for by any agreement regardless of when the

1    agreement was entered into?  If the Judge does not follow any

2    agreement, even then the Judge does not have to give you an

3    opportunity to withdraw your plea of guilty.

4            You understand that, Mr. Servando Luna?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  Domingo Santos-Rocha?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Tomas Celis Ochoa?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Gerardo Aretezan Ochoa?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Even in your case, if you consider

13   yourself to be guilty --  remember that when we make reference

14   to rights, it is for you as an individual, only for you in

15   your case.  Even if you in your case consider yourself to be

16   guilty you have a right to have your case tried before a jury,

17   which is composed of 12 persons who come and sit in a jury box

18   like this one here, and they are selected from a large group

19   of individuals who are scheduled to be here tomorrow.  They

20   are all chosen at random.  Your attorney would be at your side

21   helping you select those 12 persons.  And once that jury is

22   duly impaneled, the only way that you could be found guilty is

23   for all 12 of them to be convinced from the evidence that the

24   Government's attorney introduced to them that in fact you are

25   guilty beyond a reasonable doubt.

1          Do you understand your right to have your case tried

2    before a jury but if you plead guilty you are going to be

3    giving up and waiving that right?

4          [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

5          THE COURT:  Each defendant before me has answered in

6    the affirmative.

7          Do you understand if you plead guilty this proceeding

8    is going to conclude your right to a trial?  You are not going

9    to be entitled to any further trial in your case with or

10   without a jury.  Do you understand that?

11         [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

12         THE COURT:  Each defendant before me has answered in

13   the affirmative.

14         Do you understand if you plead guilty you will be

15   giving up your right by which you can make the Government of

16   the United States bring in all the witnesses who would testify

17   against you, so when those witnesses will be testifying they

18   will have to look at you and they will have to give an

19   opportunity to your lawyer to ask questions of those

20   witnesses?  We call that cross-examination.  Do you understand

21   that?

22         [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

23         THE COURT:  Each defendant before me has answered in

24   the affirmative.

25         Do you understand if you plead guilty you are going

1  to be giving up your very important right of appeal?  That is

2  a process effected by a record that is made of everything that

3  is said, done and happened in your case, and then that record

4  is sent to another court that is made up of more than one

5  judge called the Court of Appeals who review that record.

6           If you didn't have money to pay for that record, it

7  will be provided to you at no cost.

8           If you didn't have any money to pay an attorney to

9  take  your case before the Court of Appeals, an attorney would

10 be provided to you at no cost.

11          Did you understand your very important right of

12 appeal but if you plead guilty you are going to be giving up

13 and waiving that right?

14          [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

15          THE COURT:  Each defendant before me has answered in

16 the affirmative.

17          Do each one of you understand, if you persist in

18 pleading guilty, as a consequence of your plea, that you could

19 be confined in the penitentiary for as many as 40 years or you

20 could be confined in the penitentiary for not less than five

21 years, and also understand that in the Federal sector we no

22 longer have parole, or you could be fined $2 million, or

23 both?  That is to say, you could be confined in the

24 penitentiary for as many as 40 years and in addition you could

25 be fined $2 million, and there could be imposed against you a

1   Supervised Release Term for as many as five years, four years

2   has to be imposed.  And there has to be imposed against you an

3   assessment of $50.  And the Judge is going to be required to

4   consider any applicable Sentencing Guidelines in your case.

5            Do you understand that, Servando Luna?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Do you understand that, Domingo

8   Santos-Rocha?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Tomas Celis Ochoa?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Gerardo Aretezan Ochoa?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Did each and everyone of you who stand

15  before me understand everything that we have been discussing

16  and talking about?

17           [EACH DEFENDANT ANSWERED IN THE AFFIRMATIVE]

18           THE COURT:  All have answered in the affirmative.

19           Do you have any questions of me?

20           [EACH DEFENDANT ANSWERED IN THE NEGATIVE]

21           THE COURT:  All have answered in the negative.

22           Rearraign Servando Luna in Cause B-96-077, Count

23  Number 2.

24           MR. MOSBACKER:   United States District Court.

25           Southern District of Texas.

1         Brownsville Division.

2         B-96-077.

3         United States of America versus Servando Luna and

4   Maria Muniz Reyes.

5         Indictment.

6         The Grand Jury charges:

7         Count Number 2.

8         From on or about January 1, 1995, to on or about

9   April 26, 1995, in the Southern District of Texas, and

10  elsewhere, and within the jurisdiction of the Court,

11  defendants Servando Luna and Maria Muniz Reyes did knowingly

12  and intentionally possess with intent to distribute a quantity

13  exceeding 100 kilograms, that is, approximately 250 kilograms,

14  gross weight, of marijuana, a Schedule I controlled

15  substance.

16        In violation of Title 21, United States Code,

17  Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United

18  States Code, Section 2.

19        A true bill.

20        Signed foreman of the Grand Jury.

21        Mr. Servando Luna, do you understand the charge

22  against you in Count 2 of this indictment?

23        THE DEFENDANT:  Yes, sir.

24        MR. MOSBACKER:  How do you plead to Count 2?  Guilty

25  or not guilty?

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Are you pleading guilty because you are

3    guilty?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Has anybody promised you anything,

6    threatened you or forced you?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Knowing everything that can happen to

9    you, do you still want to plead guilty?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Listen very carefully.  What are the

12    factual allegations in this case?

13          MR. MOSBACKER:  Your Honor, the facts would show

14    between January 1, 1995, and April 26, 1995, this defendant

15    reached an agreement with a person by the name of Ramiro

16    Santoscoy from Mexico.  Mr. Santoscoy provided him with 250

17    kilograms of marijuana which were imported into the U.S.

18    Later on a portion of that load, 40 pounds, was seized in a

19    vehicle belonging to Mr. Luna on April 26 of 1995.

20          THE COURT:  How many pounds?

21          MR. MOSBACKER:  40 pounds was seized but there was a

22    total of 250 kilograms that were originally possessed by

23    Mr. Luna.

24          THE COURT:  Is that true?

25          THE DEFENDANT:  Yes.

15

```
 1              THE COURT:  You admit it?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  That you were involved with 250 kilos?

 4    About 550 pounds, isn't it?

 5              MR. MOSBACKER:  Yes, Your Honor.

 6              THE COURT:  You admit that?

 7              THE DEFENDANT:  Yes, sir.

 8              THE COURT:  Why does Santoscoy come to mind?  Was

 9    that in the Reyes case?

10              MR. MOSBACKER:  Yes, Your Honor.

11              THE COURT:  Is all of that true?

12              THE DEFENDANT:  It is true.

13              THE COURT:  That makes you guilty and I am going to

14    so find you guilty.  And I am going to find that you were

15    involved in 250 kilos of marijuana.

16              And would there be any further evidence in that

17    regard from either side?

18              MR. MOSBACKER:  No, Your Honor.

19              MR. VALLE:  No, Your Honor.

20              THE COURT:  Mr. Probation, that's 500 some-odd

21    pounds.

22              Please remain, Mr. Luna.

23              [PROCEEDINGS NOT RELATED TO U.S. VS LUNA]

24

25              THE COURT:  Having found each and everyone of you
```

16

1    guilty, you, Servando Luna, you, Domingo Santos-Rocha, Tomas

2    Celis Ochoa and Gerardo Aretezan Ochoa, guilty, I am going to

3    order the presentence report to be completed by the 6th day of

4    June 1996; that all written objections to the report be

5    completed by the 17th day of June, 1996; final report to the

6    Court by the 28th day of June, 1996; and your matters are all

7    set for sentencing hearing on the 15th day of July, 1996, at

8    8:30 in the morning.

9            A copy of this order will be made available to the

10   record and all counsel.  You may be excused.

11              [PROCEEDINGS ADJOURNED]

12

13

14

15

16

17

18

19

20

21

22

23

24

25

17

1  PROCEEDINGS, JULY 15, 1996:

2          THE COURT:  Cause B-96-077, United States of America

3  versus Servando Luna.

4          Have you had an opportunity to look at presentence

5  report prepared in your case, sir?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Did you find anything incorrect therein?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  Any reason why the report should not be

10  adopted in full and made a part of the record?

11          MR. VALLE:  No, Your Honor.

12          THE COURT:  Does the Government likewise agree that

13  the defendant factually is qualified for the benefit of the

14  Safety Valve provision?  You do agree?

15          MR. LARA:  Yes, Your Honor.

16          THE COURT:  Very well.  Do you have anything to say

17  to me before I decide what to do, Mr. Luna?

18          THE DEFENDANT:  Just that I am sorry.

19          THE COURT:  Very well, sir.  Pursuant to the

20  Sentencing Reform Act of 1984 I am going to commit you to the

21  custody of the Bureau of Prisons for a period of 37 months.

22          I am going to impose a four-year Supervised Release

23  Term subject to all conditions of Supervised Release Terms as

24  well as those that are specifically enumerated in this report,

25  which will include the fact that --  are you an American

18

1  citizen?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  That will include the fact that you are

4  to be subjected to a program that will address your problem

5  with dependency upon drugs.

6          I am not going to impose a fine against you because

7  of your inability to pay but I am going to impose an

8  assessment of $50.

9          As justification for this sentence, I am going to

10  adopt all justifications which are included in this report and

11  notice the Court has conformed his sentence to the mandates of

12  the Sentencing Guidelines and the agreements of the parties.

13          I find that you do qualify for the Safety Valve

14  provisions of law.

15          You discuss his rights of appeal with him.

16          MR. LARA:  Dismiss the remaining count.

17          THE COURT:  Motion will be granted.

18

19

20

21

22

23

24

25

1  IN THE UNITED STATES DISTRICT COURT:

2  FOR THE SOUTHERN DISTRICT OF TEXAS:

3

4

5      I, WILLIAM G. HOLLOWAY, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9

10

11  _____ DATE: _____

12          WILLIAM G. HOLLOWAY
           OFFICIAL COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBITS 7, 9, 10



**U.S. Department of Justice**
Immigration and Naturalization Service

HQREC 70/42.4 - C

_425 I Street NW_
_Washington, DC 20536_

JUL 26 2002

MEMORANDUM FOR Office of the General Counsel
Washington, DC

ATTENTION:    Associate General Counsel Janette Martinez

FROM:         Office of Records, Headquarters, (HQREC)

SUBJECT:      Certification Request(s) for July 25, 2002

Attached is(are) certified copy of document(s) relating to the following subject(s):


Servando Luna              A-34 284 206

As Chief of the Records Services Branch, Office of Records, I am duly authorized to make such
certification and to delegate such authority in my absence.

RUTH E. JONES
Chief
Records Services Branch


Attachments

# United States of America

DEPARTMENT OF JUSTICE

IMMIGRATION AND NATURALIZATION SERVICE

*July 25, 2002*

## CERTIFICATION

BY VIRTUE OF the authority vested in me by Title 8, Code of Federal Regulations, Part 103 a regulation issued by the Attorney General pursuant to Section 103 of the Immigration and Nationality Act,

I HEREBY CERTIFY that the annexed documents are originals, or copies thereof, from the records of the said Immigration and Naturalization Service, Department of Justice, relating to *Servando Luna, also known as Servando Luna-Jasso*, File No. *A-34 284 206 - CO 103.4-C* of which the Attorney General is the legal custodian by virtue of Section 103 of the Immigration and Nationality Act.

RUTH E. JONES
Chief
Records Services Branch

Immigration and Naturalization Service

Immigration and Naturalization Service

## START HERE - Please Type or Print

| FOR INS USE ONLY |
|---|

### Part 1. Information about you.

| Family Name | LUNA | Given Name | SERVANDO | Middle Initial |
|---|---|---|---|---|

**U.S. Mailing Address - Care of**   LUNA'S

| Street Number and Name | 124 AVENIDA DEL PALACIO | | Apt. # |
|---|---|---|---|
| City | BROWNSVILLE | County | CAMERON |
| State | TEXAS | ZIP Code | 78521 |

| Date of Birth (month/day/year) | 10-23-45 | Country of Birth | MEXICO |
|---|---|---|---|
| Social Security # | 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 | A # | 34284206 |

**FOR INS USE ONLY**

Returned

Receipt

8318 001    12/28/94 10:45
N-400                95.00

Resubmitted

Reloc Sent

Reloc Rec'd

FD-258

Applicant Interviewed   5-4-95

### Part 2. Basis for Eligibility (check one).

- a. ☒ I have been a permanent resident for at least five (5) years
- b. ☐ I have been a permanent resident for at least three (3) years and have been married to a United States Citizen for those three years.
- c. ☐ I am a permanent resident child of United States citizen parent(s)
- d. ☐ I am applying on the basis of qualifying military service in the Armed Forces of the U.S. and have attached completed Forms N-426 and G-325B
- e. ☐ Other. (Please specify section of law)

At interview

☐ request naturalization ceremony at court    316 a

Remarks
13, 14, 18, 24, 26
38, 41, 49, 65, 67
passed 70%

NIC 22014670

### Part 3. Additional information about you.    541-1465

| Date you became a permanent resident (month/day/year) | 11-25-72 | Port admitted with an immigrant visa or INS Office where granted adjustment of status. BROWNSVILLE, Texas |
|---|---|---|

| Citizenship | MEXICAN |
|---|---|

Name on alien registration card (if different than in Part 1)   LUNA-JASSO, SERVANDO

Other names used since you became a permanent resident (including maiden name)   N/A

| Sex | ☒ Male ☐ Female | Height | 5'7" | Marital Status: | ☐ Single ☐ Married | ☒ Divorced ☐ Widowed |
|---|---|---|---|---|---|---|

Can you speak, read and write English ?   ☒ No ☐ Yes.

**Absences from the U.S.:**

Have you been absent from the U.S. since becoming a permanent resident?   ☒ No ☐ Yes

If you answered "Yes", complete the following. Begin with your most recent absence. If you need more room to explain the reason for an absence or to list more trips, continue on separate paper.

| Date left U.S. | Date returned | Did absence last 6 months or more? | Destination | Reason for trip |
|---|---|---|---|---|
| | | ☐ Yes ☐ No | | |
| | | ☐ Yes ☐ No | Matamoros TAMPS | to visit family |
| | | ☐ Yes ☐ No | | |
| | | ☐ Yes ☐ No | | |
| | | ☐ Yes ☐ No | | |
| | | ☐ Yes ☐ No | | |

APPROVED
INS DISTRICT DIRECTOR
OCT 26 1995
Recommended by
HLG / 3671

| To Be Completed by Attorney or Representative, if any |
|---|
| ☐ Fill in box if G-28 is attached to represent the applicant |
| VOLAG# |
| ATTY State License # |

Form N-400 (Rev 07/17/91)N

**Continued on back.**

## Part 4. Information about your residences and employment.

A. List your addresses during the last five (5) years or since you became a permanent resident, whichever is less. Begin with your current address. If you need more space, continue on separate paper.

| Street Number and Name, City, State, Country, and Zip Code | Dates (month/day/year) | |
|---|---|---|
| | From | To |
| 124 AVENIDA DEL PALACIO | 01/89 | PRESENT |
| 224 LINDA LN | 06/72 | 12/88 |
| | | |
| | | |

B. List your employers during the last five (5) years. List your present or most recent employer first. If none, write "None". If you need more space, continue on separate paper.

| Employer's Name | Employer's Address | Dates Employed (month/day/year) | | Occupation/position |
|---|---|---|---|---|
| | Street Name and Number · City, State and ZIP Code | From | To | |
| SERVANDO LUNA (SELF-EMPLOYED) | 124 AVENIDA DEL PALACIO | 01/89 | PRESENT | OWNER |
| | | | | |
| | | | | |
| | | | | |

## Part 5. Information about your marital history.

A. Total number of times you have been married __1__   If you are now married, complete the following regarding your husband or wife.

| Family name | Given name | Middle initial |
|---|---|---|
| N/A LUNA | ADALIA | |

Address  224 LINDA LN — BROWNSVILLE TX —

| Date of birth (month/day/year) | Country of birth | Citizenship |
|---|---|---|
| 11-22-36 — | MEXICO — | MEXICAN |

| Social Security# | A# (if applicable) | Immigration status (if not a U S citizen) |
|---|---|---|
| | | |

Naturalization (If applicable)
(month/day/year)                    Place    (City, State)

If you have ever previously been married or if your current spouse has been previously married, please provide the following on separate paper: Name of prior spouse, date of marriage, date marriage ended, how marriage ended and immigration status of prior spouse.

## Part 6. Information about your children.

B. Total Number of Children __5__    Complete the following information for each of your children. If the child lives with you, state "with me" in the address column; otherwise give city/state/country of child's current residence. If deceased, write "deceased" in the address column. If you need more space, continue on separate paper.

| Full name of child | Date of birth | Country of birth | Citizenship | A - Number | Address |
|---|---|---|---|---|---|
| MARTIN LUNA | 10-28-66 | MEXICO | USA | N/A | 224 LINDA LN |
| JESUS LUNA | 06-18-68 | USA | AMERICAN | | SAN DIEGO, CA |
| SERVANDO LUNA, JR. | 07-17-69 | USA | AMERICAN | | 224 LINDA LN |
| EDUARDO LUNA | 06-16-72 | USA | AMERICAN | | 224 LINDA LN |
| FRANCISCO LUNA | 12-09-73 | USA | AMERICAN | | 224 LINDA LN |
| | | | | | |

Form N-400 (Rev 07/17/91)N                    *Continued on next page*

  **Continued on back**

## Part 7. Additional eligibility factors.

Please answer each of the following questions. If your answer is "Yes", explain on a separate paper.

1. Are you now, or have you ever been a member of, or in any way connected or associated with the Communist Party, or ever knowingly aided or supported the Communist Party directly, or indirectly through another organization, group or person, or ever advocated, taught, believed in, or knowingly supported or furthered the interests of communism?  ☐ Yes  ☒ No

2. During the period March 23, 1933 to May 8, 1945, did you serve in, or were you in any way affiliated with, either directly or indirectly, any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, citizen unit of the Nazi party or SS, government agency or office, extermination camp, concentration camp, prisoner of war camp, prison, labor camp, detention camp or transit camp, under the control or affiliated with:

   a. The Nazi Government of Germany?  ☐ Yes  ☒ No

   b. Any government in any area occupied by, allied with, or established with the assistance or cooperation of, the Nazi Government of Germany?  ☐ Yes  ☒ No

3. Have you at any time, anywhere, ever ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion?  ☐ Yes  ☒ No

4. Have you ever left the United States to avoid being drafted into the U.S. Armed Forces?  ☐ Yes  ☒ No

5. Have you ever failed to comply with Selective Service laws?  ☐ Yes  ☒ No

   If you have registered under the Selective Service laws, complete the following information.

   Selective Service Number: _N/A_  Date Registered: _____

   If you registered before 1978, also provide the following:

   Local Board Number: _____  Classification: _____

6. Did you ever apply for exemption from military service because of alienage, conscientious objections or other reasons?  ☐ Yes  ☒ No

7. Have you ever deserted from the military, air or naval forces of the United States?  ☐ Yes  ☒ No

8. Since becoming a permanent resident, have you ever failed to file a federal income tax return?  ☐ Yes  ☒ No

9. Since becoming a permanent resident, have you filed a federal income tax return as a nonresident or failed to file a federal return because you considered yourself to be a nonresident?  ☐ Yes  ☒ No

10. Are deportation proceedings pending against you, or have you ever been deported, or ordered deported, or have you ever applied for suspension of deportation?  ☐ Yes  ☒ No

11. Have you ever claimed in writing, or in any way, to be a United States citizen?  ☐ Yes  ☒ No

12. Have you ever:

    a. been a habitual drunkard?  ☐ Yes  ☒ No

    b. advocated or practiced polygamy?  ☐ Yes  ☒ No

    c. been a prostitute or procured anyone for prostitution?  ☐ Yes  ☒ No

    d. knowingly and for gain helped any alien to enter the U.S. illegally?  ☐ Yes  ☒ No

    e. been an illicit trafficker in narcotic drugs or marijuana?  ☐ Yes  ☒ No

    f. received income from illegal gambling?  ☐ Yes  ☒ No

    g. given false testimony for the purpose of obtaining any immigration benefit?  ☐ Yes  ☒ No

13. Have you ever been declared legally incompetent or have you ever been confined as a patient in a mental institution?  ☐ Yes  ☒ No

14. Were you born with, or have you acquired in same way, any title or order of nobility in any foreign State?  ☐ Yes  ☒ No

15. Have you ever:

    a. knowingly committed any crime for which you have not been arrested?  ☐ Yes  ☒ No

    b. been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations?  ☐ Yes  ☒ No

( If you answer yes to 15, in your explanation give the following information for each incident or occurrence the city, state, and country, where the offense took place, the **date** and nature of the offense, and the **outcome** or **disposition** of the case.)  _1 DWI-1987 (Dismissed)_

## Part 8. Allegiance to the U.S.

If your answer to any of the following questions is "NO", attach a full explanation:

1. Do you believe in the Constitution and form of government of the U.S.?  ☒ Yes  ☐ No

2. Are you willing to take the full Oath of Allegiance to the U.S.? (see instructions)  ☒ Yes  ☐ No

3. If the law requires it, are you willing to bear arms on behalf of the U.S.?  ☒ Yes  ☐ No

4. If the law requires it, are you willing to perform noncombatant services in the Armed Forces of the U.S.?  ☒ Yes  ☐ No

5. If the law requires it, are you willing to perform work of national importance under civilian direction?  ☒ Yes  ☐ No

Form N-400 (Rev. 07/17/91)N

**Continued on back**

## Part 9. Memberships and organizations.

A.  List your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place. Include any military service in this part. If none, write "none". Include the name of organization, location, dates of membership and the nature of the organization. If additional space is needed, use separate paper.

N/A

## Part 10. Complete only if you checked block " C " in Part 2.

How many of your parents are U.S. citizens?  ☐ One  ☐ Both  (Give the following about one U.S. citizen parent:)

| Family Name | Given Name | Middle Name |
|---|---|---|
| Address | | |

Basis for citizenship:         Relationship to you (check one):   ☐ natural parent   ☐ adoptive parent
☐ Birth
☐ Naturalization Cert. No.                                    ☐ parent of child legitimated after birth

If adopted or legitimated after birth, give date of adoption or, legitimation: *(month/day/year)*_____

Does this parent have legal custody of you?  ☐ Yes  ☐ No

*(Attach a copy of relating evidence to establish that you are the child of this U.S. citizen and evidence of this parent's citizenship.)*

## Part 11. Signature.  *(Read the information on penalties in the instructions before completing this section).*

I certify or, if outside the United States, I swear or affirm, under penalty of perjury under the laws of the United States of America that this application, and the evidence submitted with it, is all true and correct. I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

Signature _Fernando Luna_                                      Date  12-16-94

*Please Note:   If you do not completely fill out this form, or fail to submit required documents listed in the instructions, you may not be found eligible for naturalization and this application may be denied.*

## Part 12. Signature of person preparing form if other than above. *(Sign below)*

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

Signature _Mary P. Luna_          Print Your Name  Mary P. Luna          Date 12/16/94

Firm Name and Address

---

### DO NOT COMPLETE THE FOLLOWING UNTIL INSTRUCTED TO DO SO AT THE INTERVIEW

I swear that I know the contents of this application, and supplemental pages  1  through  ___ , that the corrections , numbered 1 through  ___ , were made at my request, and that this amended application, is true to the best of my knowledge and belief.

_Fernando Luna_
(Complete and true signature of applicant)

Subscribed and sworn to before me by the applicant.

_____  10-26-95
(Examiner's Signature )          Date

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. B 01-115 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SERVANDO LUNA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JOSE ARMANDO FARIAS

My name is Jose Armando Farias and I have personal knowledge of the following facts:

1.    I have been employed by the Immigration and Naturalization Service (INS) from 1984 to the present. My current position is Senior Special Agent. During my employment with the INS, one of my duties has been to interview applicants for naturalization and to adjudicate applications for naturalization.

2.    On July 29, 2002, in preparation for making this declaration, I reviewed Servando Luna's application for naturalization, alien registration number A34 284 206. I have verified that my signature is on the last page of Mr. Luna's naturalization application and on the approval stamp on the first page of the application, indicating that I am the officer who conducted Mr. Luna's naturalization interview on October 26, 1995. I approved Mr. Luna's application on October 26, 1995, based on his answers to the questions on his application and his testimony given during his naturalization interview. Although not all of the writing in red ink on Mr. Luna's application is mine, all of the markings and writing in red ink on page three of Mr. Luna's naturalization application is mine.

3.    When I interviewed applicants for naturalization, it was my invariable practice to begin the interview by placing the applicant under oath. I would then verify the information in the naturalization application by reviewing the applicant's documentation and by asking the applicant questions. I would ask the applicant questions from each section of the application to verify the applicant's eligibility for naturalization. It was my practice to ask the applicant questions regarding his identity, his current address, the basis for his eligibility for naturalization, his marital history, and his criminal history. If the applicant indicated that any of the information in the application had changed since the time he had filed it, I would note the new information on the application in red ink.

4.    I conducted Mr. Luna's naturalization interview in the Spanish language because it was my belief that he was eligible for a waiver of the English language requirement. I am fluent in the Spanish language.

5.    In interviewing applicants for naturalization, it was my invariable practice to ask an applicant questions regarding his criminal history. Specifically, I would always ask questions 15(a) and 15(b) of Part 7 of the naturalization application. It was my invariable practice to ask each applicant whether he had ever committed a crime for which he had not been arrested. When conducting the interview in Spanish, as I did Mr. Luna's, it was my invariable practice to translate this question into Spanish as it is reads on the application, "Nunca ha commitido usted un crimen por cual no ha sido arrestado?" I would also always ask each applicant whether he had ever been arrested or detained for any reason by law enforcement, and other questions relating to his criminal history such as whether the applicant had ever been taken to jail, appeared in court, or been sentenced or placed on probation. If an applicant answered yes to any of these questions or admitted to a past criminal record or activities, it was my practice to note this information near Part 7, Question 15 on the application in red ink. In Mr. Luna's case, I noted in red ink on his application that he had a Driving While Intoxicated offense (DWI) in 1984 that was dismissed. It was also my practice to ask an applicant who admitted to an offense if he had any other criminal history. The notations in red ink on Mr. Luna's application indicate that he did not reveal any further criminal history or activity at his interview other than the DWI offense during my interview with him.

6.    If Mr. Luna had revealed to me that he had committed the crime of possession with intent to distribute marijuana in 1995, I would have noted this information in red ink on the application and would not have approved Mr. Luna's naturalization application. Mr. Luna's commission of possession with intent to distribute marijuana would have affected my official decision because it would raise serious questions regarding whether Mr. Luna had established the requisite good moral character for naturalization. See INA § 101(f), 8 U.S.C. § 1101(f).

7.    At the end of a naturalization interview, it was my practice to ask the applicant if everything in the application remained true and correct and if the applicant had omitted any information from the application. I would then ask the applicant to sign the application to verify that all of the statements and information in the application remained true and correct. I would then sign the naturalization application, myself, as a witness to the applicant's sworn testimony and signature. I followed this procedure in Mr. Luna's case as evidenced by my signature dated October 26, 1995, and Mr. Luna's signature at the bottom of page four of the application.

8.    There are no notations in red ink on Mr. Luna's application regarding the fact that Mr. Luna committed possession with intent to distribute marijuana in 1995. The absence of any notations on Mr. Luna's application regarding the above information indicates that he did not

Farias Declaration - Page 2

reveal to me in any way any of this information during his naturalization interview and that he, in fact, testified that he had never committed a crime for which he had not been arrested.

I declare, under the penalty of perjury, that the foregoing is true and correct.

Executed on July 30, 2002, in Harlingen, Texas.

Jose Armando Farias
Senior Special Agent
Immigration and Naturalization Service

No. 2201=670

*Personal description of holder as of date of naturalization:*

*Date of birth:* OCTOBER 23, 1945

*Sex:* MALE

*Height:* 5 *feet* 7 *inches*

*Marital status:* DIVORCED

*Country of former nationality:*
MEXICO



I.N.S. *Registration No.* A34 284 206

*I certify that the description given is true, and that the photograph affixed hereto is a likeness of me.*

(Complete and true signature of holder)

*Be it known that, pursuant to an application filed with the Attorney General*

SERVANDO LUNA

*at:* HARLINGEN, TEXAS

*The Attorney General having found that:*

*then residing in the United States, intends to reside in the United States when so required by the Naturalization Laws of the United States, and had in all other respects complied with the applicable provisions of such naturalization laws and was entitled to be admitted to citizenship, such person having taken the oath of allegiance in a ceremony conducted by the*

U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS

*at:* BROWNSVILLE, TEXAS                *on:*

*that such person is admitted as a citizen of the United States of America.*

*Commissioner of Immigration and Naturalization*

IT IS PUNISHABLE BY U S LAW TO COPY, PRINT OR PHOTOGRAPH THIS CERTIFICATE, WITHOUT LAWFUL AUTHORITY.

FORM N-550 REV. 5-81

Declaraciones de Intencion

Certificado Nuevo

INS  Numero de Archivo ___34  284  206___

### JURAMENTO DE LEALTAD

Por la presente declaro, bajo juramento, que absoluta y enteramente
renuncio a todo lealtad a cualquier realeza extranjera, potentado, estado o
soberania de quien o a la cual yo haya sido hasta ahora sujeto o ciudadano;
que yo apoyare y defendere la Constitucion y leyes de los Estados Unidos De
America contra todo enemigo extranjero o domestico;

₧  que yo mostrare verdadera fe  y lealtad hacia la misma;

₧  que yo portare armas a favor de los Estados Unidos cuando la ley lo
     requiera;

₧  que yo prestare servicio como no combatiente en las fuerzas armadas de
     los Estados Unidos cuando la ley lo requiera;

₧  que yo hare trabajo de importancia nacional bajo direccion civil cuando la
     ley lo requiera;

y que yo tomo esta obligacion liberemente sin ninguna reservacion mental o
intencion de evasion, QUE DIOS ME AYUDE.

En reconocimiento de lo cual pongo mi firma.

_____
(Firma de Applicante)

_10- 26 - 95_
(Fecha)

**U.S. Department of Justice**
Immigration and Naturalization Service

Notice of Naturalization Oath Ceremony



**115**

AR # ___A34 284 206___

Date ___November 20, 1995___

Servando   Luna
124 Avenida Del Palacio
Brownsville, TX  78521

You are hereby notified to appear for a Naturalization Oath Ceremony on:

December 04, 1995

at:   Jacob Brown Auditorium
      600 International Blvd.
      Brownsville, Texas 78520

Please report promptly at _____8:00_____ A. M.

Male adults appearing at the ceremony should wear coats and ties. Women should
wear dresses. Adult petitioners have an obligation to so advise their friends
and relatives.

Please be aware that the  process requires several hours to complete.

You must bring the following with you:

- ☒ This letter, WITH ALL OF THE QUESTIONS ON THE OTHER SIDE ANSWERED IN INK OR ON A TYPEWRITER.
- ☒ Alien Registration Card.
- ☒ Reentry Permit, or Refugee Travel Document.
- ☒ Any Immigration documents you may have.
- ☒ If the naturalization application is on behalf of your child (children), bring your child (children).
- ☐ Other

If you cannot come to this appointment, return this notice immediately and state why you cannot appear. In such
case, you will be sent another notice of appointment for a ceremony at a later date. You must appear at an oath
ceremony to complete the naturalization process.

Form N-445 (Rev. 1/8/92)          (SEE OTHER SIDE)

In connection with your application for naturalization, please answer each of the questions by checking "Yes" or "No". You should answer these questions the day you are to appear for the citizenship oath ceremony. These questions refer to actions since the date you were first interviewed on your <u>Application for Naturalization</u>. They do not refer to anything that happened before that interview.

After you have answered every question, sign your name and fill in the date and place of signing, and provide your current address.

You must bring this completed questionnaire with you to the oath ceremony, as well as the documents indicated on the front, and give them to the Immigration employee at the oath ceremony. You may be questioned further on your answers at that time.

| AFTER the date you were first interviewed on your Application for Naturaliztion, Form N-400: | | ANSWERS | |
|---|---|---|---|
| 1. Have you married, or been widowed, separated, or divorced? (If "Yes" please bring documented proof of marriage, death, separation or divorce.) | 1. | ☐ Yes | ☑ No |
| 2. Have you traveled outside the United States? | 2. | ☐ Yes | ☑ No |
| 3. Have you knowingly committed any crime or offense, for which you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations? | 3. | ☐ Yes | ☑ No |
| 4. Have you joined any organization, including the Communist Party, or become associated or connected therewith in any way? | 4. | ☐ Yes | ☑ No |
| 5. Have you claimed exemption from military service? | 5. | ☐ Yes | ☑ No |
| 6. Has there been any change in your willingness to bear arms on behalf of the United States; to perform non-combatant service in the armed forces of the United States; to perform work of national importance under civilian direction, if the law requires it? | 6. | ☐ Yes | ☑ No |
| 7. Have you practiced polygamy; received income from illegal gambling; been a prostitute, procured anyone for prostitution or been involved in any other unlawful commercialized vice; encouraged or helped any alien to enter the United States illegally; illicitly trafficked in drugs or marihuana; given any false testimony to obtain immigration benefits; or been a habitual drunkard? | 7. | ☐ Yes | ☑ No |

I certify that each of the answers shown above were made by me or at my direction, and that they are true and correct.

Signed at _Brownsville Texas_ , on _November 27, 1995_
(City and State)                               (Date)

_Fernando Luna_   124 Avenida del Palacio Brownsville TX
(Full Signature)   (Full Address and ZIP Code)                      78520

Authority for collection of the information requested on Form N-445 is contained in Sections 101(f), 316, 332, 335 and 336 of the Immigration and Nationality Act (8 U.S.C. 1101 (f), 1427, 1443, 1446 and 1447). Submission of the information is voluntary. The principal purposes for requesting the information are to enable examiners of the Immigration and Naturalization Service to determine an applicant's eligibility for naturalization. The information requested may, as a matter of routine use, be disclosed to naturalization courts and to other federal, state, local or foreign law enforcement and regulatory agencies, the Department of Defense, including any component thereof, the Selective Service System, the Department of State, the Department of the Treasury, the Department of Transportation, Central Intelligence Agency, Interpol and individuals and organizations in the processing of any application for naturalization, or during the course of investigation to elicit further information required by the Immigration and Naturalization Service to carry out its functions. Information solicited which indicates a violation or potential violation of law, whether civil, criminal, or regulatory in nature, may be referred, as a routine use, to the appropriate agency, whether federal, state, local or foreign, charged with the responsibility of investigating, enforcing or prosecuting such violations. Failure to provide all or any of the requested information may result in a denial of the application for naturalization.

Public Reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: U.S. Department of Justice, Immigration and Naturalization Service, (Room 5304), Washington, DC 20536; and to the Office of Management and Budget, Paperwork Reduction Project: OMB No. 1115-0052,; Washington, DC 20503.