IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 2 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. B-01-115 |
| SERVANDO LUNA, | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant, SERVANDO LUNA, and pursuant to FRCP Rule 56, respectfully files his Defendant's Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment, and in support of his motion would show the following:

1. There are genuine issue of material fact regarding Defendant's procurement of his naturalization, and as such, his de-naturalization cannot be mandated under 8 U.S.C. Sec. 1451(a), as the government requests in its motion.

A. Procedural background.

1

The government of the United States is seeking to revoke and set aside, following Section 340(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. Sec. 1451(a), Defendant's order of naturalization. In its complaint, the government alleges that Servando Luna illegally procured his citizenship, in the naturalization process, by 1. Misrepresentation and , 2. Concealment of material facts.

Argument.

A. Government must prove factual concealment or misrepresentatition

As the government  noted in its "Memorandum in support of its Motion for Summary Judgment" (Hereinafter referred to as Memorandum), the Government must prove that Servando Luna procured his citizenship by misrepresentation, or by concealing a material fact, by "clear , convincing, and unequivocal evidence," which "leave[s] no issue in doubt." Memorandum, p. 5, referring to Fedorenko v. United States, 449 U.S. 490, 505 (1981).  The government's primary contention in support of its motion is that the doctrine of collateral estoppel provides it with a basis to assert that Servando Luna both misrepresented and concealed a material fact, whether in fact he actually "misrepresented" or "concealed a material fact". Memorandum, p. 6, referring to Green v. Amerada Hess Corp., 707 F. 2d 201, 205 (5th Cir. 1983); Stovall v. Price Waterhouse Co., 652F. 2d 537, 540-41 (5th Cir. 1981).

The Government apparently does not understand the meaning of "misrepresentation" nor does it understand the meaning of "concealment" when it equates Servando Luna's entry of a plea of guilty as part of a plea bargain as being conclusive as to the issues in this case. Memorandum, p. 7, referring to Emich Motors Corp. V General Motors Corp, 340 U.S. 558, 568-69 (1951); United States v. Thomas, 709 F. 2d 968, 972 (5th Cir. 19083); Piper v. United States, 392 F. 2d 426, 464-65 (5th Cir, 1968), Tomlinson v. Lefkowitz, 334 F. 2d 262, 264-65 (5th Cir 1964).

Defendant, Servando Luna, never denied that he worked out a plea bargain, and that as part of the plea bargain, he agreed to admit in his plea of guilty to the accusation in Count II which the government accused him of.  See Memorandum, Exhibits # & 4.  Also, see Memorandum, pp. 8-9. Defendant avers that the fact of guilt is not essential to a court's acceptance of a plea, so long as the plea is tactically sound.  North Carolina v. Alford, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (defendant denied committing crime, but guilty plea upheld, because it was tactically sound).[1]

---

[1] An *Alford* plea, named after the Supreme Court decision authorizing such practice, refers to instances in which a defendant, without explicitly admitting guilt, pleads guilty to receive the benefits of the plea bargain. North Carolina v. Alford, 400 U.S. 25, 32-33, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (defendant pleaded guilty to receive benefits of plea bargain). In other words, situations arise in which an innocent defendant may be reluctant to proceed to trial so as to avoid

the risk that a harsher sentence may be imposed if the trier of fact determines that the defendant is guilty. The defendant may, nevertheless, wish to maintain his or her innocence. The protestation of innocence may be directed at the factual basis of the crime, or the claim of innocence may be directed toward a defense that negates criminal intent. In either event, the court faces a profound conflict that strikes at the heart of the judicial system; the need to ascertain the truth of the criminal event as opposed to a defendant's legitimate concern that he or she may lose at trial, and have to face the consequences of a lengthy period of incarceration.

The *Alford* plea is a variation of a guilty plea and, therefore, the basic requirements for a guilty plea must be fulfilled. For instance, the plea must be made voluntarily and must be knowing.Brady v. United States, 397 U.S. 742, 758, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (criminal defendant may not waive right to trial unless he does so ``competently and intelligently''); McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969) (plea ``cannot be fully voluntary unless the defendant possesses an understanding of the law in relation to the facts''). To achieve this, Rule 11 requires trial judges to personally speak with defendants to determine whether they understand the nature of the charges against them[12], and to decide whether there is a sufficient factual basis to support the pleas. Fed. R. Crim. P. 11(c) .

*Alford* pleas and guilty pleas are distinguishable, however, in terms of what is necessary to establish the factual basis for either. *Alford* pleas require judges to establish factual bases for the guilty pleas independent of the defendants' statements, whereas factual bases for guilty pleas are usually obtained by defendants' admissions to crimes they committed. The *Alford* Court concluded that ``strong'' and ``overwhelming'' evidence against the defendant establishes a sufficient factual basis for the trial court to accept the defendant's guilty plea, notwithstanding the defendant's contemporaneous denial of guilt.  North Carolina v. Alford, 400 U.S. 25, 32, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (judge required to establish factual basis for guilty plea).

Prior to *Alford*, the circuit courts were divided as to whether pleas in which the defendant claimed innocence should be accepted purely for the dispositional benefits such pleas would afford. In one case the Fifth Circuit held that the trial court erred in accepting a plea of guilty when the defendant did not admit his criminal intent as to the endorsement of a fraudulent negotiable instrument. Hulsey v. United States, 369 F.2d 284, 287 (5th Cir. 1966) . Several decisions of the District of Columbia Circuit established a contrary rule that in ``exceptional cases'' the district court had the authority to accept a guilty plea, notwithstanding the defendant's subjective belief that he or she could be acquitted if by choosing to proceed to trial. Bruce v. United States, 379 F.2d 113, 119 (D.C. Cir. 1967). As stated in one decision, ``[w]hile it would be improper for a court to accept such a plea unless satisfied there was significant evidence that the accused was involved or implicated in the offense, the court is not required to insist that the accused concede the inevitability or correctness of a verdict of guilty were the case tried.'' McCoy v. United States, 363 F.2d 306, 308 (D.C. Cir. 1966) . This doctrine was elaborated on when the Court stated:

[T]here is room for the conclusion that judgment on a plea of guilty is not contrary to justice if based on a high probability of the outcome of trial, even though neither a plea nor a verdict of guilty would conform to the defendant's subjective evaluation. Examples include not only the easy case where the question of guilt involves judgment rather than clear-cut facts (as in a crime of recklessness); the judge need not reach a definite conclusion of guilt if he is satisfied of a high probability of conviction. Bruce v. United States, 379 F.2d 113, 120 (D.C. Cir. 1967) . It became important, however, to differentiate between the two categories of cases. In the first category were cases in which the defendant denied the commission of any act or conduct that might constitute a criminal offense--i.e., a complete denial of involvement. Thus, regardless of the human tendency of defendants ``to deny or gloss over their involvement," if at ``the moment of truth" such denial persists, no judge may conscientiously accept a guilty plea under such circumstances. Id. In the second category were cases in which the defendant admittedly performed an act or engaged in conduct that, if accompanied by the requisite knowledge or intent, constituted the offense charged or the one pleaded to. The mere fact that the defendant may have been equivocal as to state of mind at the time of commission of the act would not preclude acceptance of a plea, provided that the facts before the court (which might require the introduction of evidence) clearly gave rise to an inference that the requisite intent or knowledge existed. Griffin v. United States, 405 F.2d 1378 (D.C. Cir. 1968) (court refused to accept plea because defendant gave conflicting versions of events). In this second category of cases, the approach of accepting a guilty plea also subsumed cases in which there was a possible defense that might excuse, justify, or mitigate the degree of the crime charged, but in which the defendant's testimony in support of the defense was so inherently incredible or contradictory that the likelihood of convincing the jury was minimal.

The Supreme Court noted the conflicting approaches to such pleas and addressed them in *Alford*. North Carolina v. Alford, 400 U.S. 25, 32-33, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). In that decision, the defendant was charged with first degree murder. After consultation with his attorney, he accepted the prosecution's offer to allow a plea to second degree murder thereby reducing his liability from death to a maximum of thirty years imprisonment. The prosecution's case was very strong, although circumstantial. At the plea hearing Alford denied his guilt while expressing his desire to plead guilty to avoid the harsher penalty for first degree murder.

On appeal, the Supreme Court held that judges do not violate due process by accepting guilty pleas from defendants who simultaneously claim their innocence. The Court found that the acceptance of these pleas is within the discretion of the states and individual judges.United States v. Cox, 923 F.2d 519, 524 (7th Cir. 1991) (although court could have accepted plea under *Alford*, rejection of plea was within court's discretion because court was aware of strong case against defendant).

5

As noted in Pellegrino, the "government bears a heavy burden in a denaturalization proceeding. It must establish by "'clear and unequivocal, and convincing evidence' evidence which does not leave 'the issue in doubt' that the defendant has been guilty of fraud or illegal conduct in obtaining naturalization which deceived the Government. <u>United States v. Pellegrino</u>, 155 F. Supp. 726, 726-27 (S.D. N.Y. 1957), referring to <u>Schneiderman v. United States</u>, 320 U.S. 118, 158 (1943); <u>Knauer v. United States</u>, 328 U.S. 654, 656 (19))). <u>United States v. Anastsio</u>, 226 F. 2d 912 (3rd Cir 1955). In such a proceeding '* * * the facts and the law should be construed as far as is reasonably possible in favor of the citizen.' Id, Pellegrino, 155, F. Supp. 726, at 727, referring to  Schneiderman v. United States, supra.  See, also, <u>United States v. Minker</u>, 350 U.S. 179, 193,  ; Gonzales v. Landon, 350 U.S. 920.

Servando Luna  did not try to set aside his plea bargain and to have his conviction set aside, and if he had, his effort may have been fruitless anyway. See <u>United States v. Ludwig</u>, 972 F. 2d 948, 951 (8th Cir. 1992) (motion to withdraw plea based on belated protestations of innocence denied when defendant admitted on record that he had committed crime and he presented no other evidence to support his claim of innocence).  What Servando Luna states is simply that he did not "misrepresent" nor "conceal a material fact, wilfully, intentionally, knowingly,

6

nor even recklessly, neither when he applied for citizenship, nor when his daughter in law helped him fill the form out due to his lack of English, nor when Agent Farias assisted him in going over the form and interviewed him, nor when he took the oath, and just prior to taking the oath when he swore that he had not committed a crime for which he was not arrested. See Exhibit A, Statement of Servando Luna. See Exhibit C, Deposition of Agent Farias.

B. Facts of Conviction and burden of proof in this Case are not the same, and, as such, collateral estoppel is inapplicable with respect to proofs of elements of misrepresentation or concealment.

Servando Luna argues that even if the general principles of collateral estoppel are applied, as per <u>Tomlinson v. Klowitezs</u>, 334 F. 2d 262, 264 (5th Cir), and even if a prior conviction may work an estoppel in favor of the Government, Id, 340 U.S. 558, at 568-69, the estoppel only applies to the issue of conviction, and any application of it, and not to whether he factually lied, misrepresented, concealed, covered up, or however the government may wish to describe Servando Luna's answers to the questions in his naturalization application or during his naturalization process. Id, Pellegrino, 155 F. Supp. 726, 726-27 As in *Alford*, in the criminal case against Servando Luna, there was ``strong'' and ``overwhelming'' evidence against the defendant establishing a sufficient factual basis for the trial court to accept the

defendant's guilty plea, notwithstanding the defendant's understanding that the
proceedings were merely a formality through which his plea would be accepted.
See Exhibit A, Statement of Servando Luna, reference to "show". North Carolina v.
Alford, 400 U.S. 25, 32, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (judge required to
establish factual basis for guilty plea). During his plea , Servando Luna looked  to
counsel for a solution to his predicament, and to have the plea accepted, and finding
none, accepted the situation as a "show", a means for him to diminish his risk. Luna
Affidavit, Exhibit A.  Unfortunately, for the government, just because there was a
sufficient factual basis for the Court to accept a plea, because this Defendant had
left himself exposed to accusations of wrongdoing by not separating his life from
that of wrongdoers, the same acceptance of the plea does not in any way prove up a
lie in the application process.  See Exhibit A, Statement of Servando Luna. The
proofs are different. If there is a lie, there must be a factual lie.  Pellegrino, 155 F.
Supp. 726, 726-27 Ignoring its burden, the Government wishes this Court to
entertain a fiction, once again, that although it may be true (and Servando Luna says
it is true) that this Defendant is factually innocent of the crime to which he pled
guilty, that as a matter of law the lie has become the truth for purposes of proving up
whether he lied at all in his naturalization application process. Such logic goes
against the legal burden the Government has in this denaturalization proceeding.

8

Pellegrino, 155 F. Supp. 726, 726-27.

The doctrine of Collateral Estoppel does not apply, hence, because the government's burden is to prove actual, factual misrepresentation and concealment. Id, Pellegrino, 155, F. Supp. 726, at 726-27 Although it may not make sense to the Government's agents who are prosecuting this case as to why an innocent man would plea guilty to something he didn't do, such legal fictions are recognized and are part of the fabric of the criminal justice system.  See Alford, supra. What Servando Luna did when he pled guilty is not the true issue, as the government wishes to argue. Rather, the only issue is a factual one: Did he lie? Did he misrepresent and conceal?  Servando denies that he did, and is prepared to show that he was truthful in his answers. See Luna Affidavit, Exhibit 1.

The government bears a heavy burden of proof in attempting to revoke an individual's citizenship.  Because citizenship is such a precious right, the government to succeed must prove its case by clear, unequivocal, and convincing evidence which does not leave the issue in doubt. U.S. v. Sprogis,  763 F.2d 115 (C.A.2 (N.Y.) 1985) , referring to  Fedorenko, 449 U.S. at 505, 101 S.Ct. at 747.  In addition, "the facts and the law should be construed as far as is reasonably possible in favor of the citizen."  Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796 (1943). In Chaunt, the government sought to

denaturalize the defendant because he had procured his citizenship by concealment

and misrepresentation of his arrest record.  He had stated on a form connected with

his naturalization that he had never been arrested.  In fact, he had been arrested

three times: once for distributing handbills in violation of an ordinance, once for

making a speech in violation of park regulations, and once for general breach of the

peace.  All of these arrests occurred at least ten years prior to the defendant's

naturalization.  Although the record in the case was not clear, it appeared that he

was convicted of only one charge, that involving the park regulation.  The district

court canceled the defendant's naturalization, and the Court of Appeals for the Ninth

Circuit affirmed.  Chaunt v. United States , 270 F.2d 179. 81 S.Ct. 147 (1959).

The Supreme Court reversed.  Chaunt v. U.S., 81 S.Ct. 147  364 U.S. 350

(1960)  It first noted that in a denaturalization proceeding the Government bears the

burden of proof by "clear, unequivocal, and convincing" evidence.  Id, 364 U.S. at

353.  The Court then held that a misrepresentation or concealment was material

only if the government proved either (1) that facts were suppressed which, if known,

would have warranted denial of citizenship or (2) that their disclosure might have

been useful in an investigation possibly leading to the discovery of other facts

warranting denial of citizenship.  U.S. v. Fedorenko,  597 F.2d 946, 950  (C.A.5

(Fla.) 1979).  The import of Chaunt and Fedorenko is "clear, unequivocal, and

10

convincing evidence". In essence, there must be factual evidence that the

misrepresentation or concealment took place. The Government's argument of

denaturalization by legal fiction goes against the "clear, unequivocal, and

convincing evidence" standard of actual, factual misrepresentation or concealment

found necessary in both Chant and Fedorenko. Id. See also, Id, Pellegrino, 155, F.

Supp. 726, at 727.

II. Summary Judgment Procedure is Inapplicable

The government's arguments in its memorandum attempts to circumvent, once

again, the fact that the record must be proven and that the government cannot

merely proscribe. Gorbach v. Reno, 219 F.3d 1087(C.A.9 (Wash.) 2000).(finding

that the  Attorney General retained her powers to correct, reopen, alter, modify, or

vacate naturalization orders, as statute expressly provided for denaturalization

proceedings in the district court, savings clause did not grant any powers not already

held, and any doubt as to Attorney General's authority was to be resolved in favor of

naturalized citizens.). U S v. Orend, 221 F. 777(W.D.Pa.1915). A denaturalization

proceeding is essentially an action for rescission, and, to prevail, the government

must establish that defendant was guilty of fraud or misrepresentation and that

government was deceived thereby.  U. S. v. Anastasio, 226 F.2d 912 (C.A.3 (N.J.)

1955),, certiorari denied 76 S.Ct. 787, 351 U.S. 931, 100 L.Ed. 1460. In a

convincing evidence". In essence, there must be factual evidence that the

misrepresentation or concealment took place. The Government's argument of

denaturalization by legal fiction goes against the "clear, unequivocal, and

convincing evidence" standard of actual, factual misrepresentation or concealment

found necessary in both Chant and Fedorenko. Id. See also, Id, Pellegrino, 155, F.

Supp. 726, at 727.

II. Summary Judgment Procedure is Inapplicable

The government's arguments in its memorandum attempts to circumvent, once

again, the fact that the record must be proven and that the government cannot

merely proscribe. Gorbach v. Reno, 219 F.3d 1087(C.A.9 (Wash.) 2000).(finding

that the  Attorney General retained her powers to correct, reopen, alter, modify, or

vacate naturalization orders, as statute expressly provided for denaturalization

proceedings in the district court, savings clause did not grant any powers not already

held, and any doubt as to Attorney General's authority was to be resolved in favor of

naturalized citizens.). U S v. Orend, 221 F. 777(W.D.Pa.1915). A denaturalization

proceeding is essentially an action for rescission, and, to prevail, the government

must establish that defendant was guilty of fraud or misrepresentation and that

government was deceived thereby.  U. S. v. Anastasio, 226 F.2d 912 (C.A.3 (N.J.)

1955),, certiorari denied 76 S.Ct. 787, 351 U.S. 931, 100 L.Ed. 1460. In a

denaturalization proceeding, intent to deceive on the part of defendant is an essential

element of the government's proof.  U S v. Pellegrino, 155 F.Supp. 726(,

S.D.N.Y.1957). State of mind elements are not subject to the type of proof that the

government wishes this court to entertain as a basis for denaturalization. Where

defendant procured his naturalization certificate illegally and fraudulently by falsely

swearing to examiners under oath, following the filing of his petition for citizenship,

that he had never been a member of the Communist Party prior to the filing of his

petition, the certificate would be canceled.  U.S. v. Charnowola, 109 F.Supp. 810

(E.D.Mich.1953), affirmed 211 F.2d 118, certiorari denied 75 S.Ct. 28, 348 U.S.

817, 99 L.Ed. 644.   See, also, U.S. v. Chruszczak, 127 F.Supp. 743( D.C.Ohio

1954).

Using the summary judgment procedure, the government is attempting to do

what it could not do under  8 C.F.R. § 340.1, which the court in Gorbach found void

because  the regulation providing for administrative revocation of citizenship lacked

statutory authority. Gorbach v. Reno,  219 F.3d 1087, 1091 (C.A.9 (Wash.),2000.).

In Gorbach, the Court noted that "[t]he INS has a tough argument to make.  It is

basically that, even though Congress expressly provided for denaturalizations only

in actions by United States attorneys in courts, nevertheless the saving clause in the

statute implied that, by shifting the power of naturalization to the Attorney General,

Congress also shifted to her jurisdiction, partially concurrent with district court

jurisdiction, the power to denaturalize. Because the power to denaturalize is so

important, and because it differs as a practical matter from the power to naturalize,"

the Gorbach court concluded, "this silent and subtle implication is too weak to

support this argument." Id, 219 F. 3d 1087, at 1091. The Gorbach court noted that

the importance of naturalization cannot be underestimated in the life on the person

affected. Id. In United States v. Minker  350 U.S. 179 (1956), the Court said that

denaturalization "may result in loss of both property and life;  or of all that makes

life worth living." Minker adopts the rule that "where there is doubt it must be

resolved in the citizen's favor." Id,  219 F.3d 1087, at 1097, referring to Minker, 350

U.S. 179, at  187 (quoting Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492,

66 L.Ed. 938 (1922).

The Gorbach Court underscored the philosophies inherent in protecting a

person's citizenship, and how courts have stressed this over time.


That philosophy emphasizes the importance of citizenship and the safeguards
against taking it away.  In Zucca, where the denaturalization statute had prescribed
how United States attorneys should file a case (with an affidavit), the Court held
that the United States attorneys could not also file in the usual way (without an

affidavit).[2] The "underlying philosophy of Bindczyck " that Zucca says "remains intact" is "safeguarding citizenship from abrogation except by a clearly defined procedure," --"clearly defined,"[3] that is, by statute.  Zucca applied the Bindczyck holding that the statutory denaturalization procedure was "a self-contained, exclusive procedure" that "covers the whole ground."[4]  That means, for this case, that the denaturalization procedure defined in 8 U.S.C. § 1451(a) is "exclusive" and "covers the whole ground."

Id, 219 F.3d 1087, at 1098.

Servando Luna avers that 8 U.S.C.  § 1451(a) specifically provides for a factual finding by a district court in which a Defendant accused and facing the loss of citizenship must be afforded the most ample legal forum possible to state his cause and his reasons why his citizenship should not be taken away. The Gorbach Court noted that "[c]itizenship in the United States of America is among our most valuable rights.  For many of us, it is all that protects our life, liberty, and property from arbitrary deprivation.  The world is full of miserable governments that protect none of these rights.  Many of us would be dead or never conceived in wretched places in other countries, had we or our ancestors not obtained American citizenship.   The opportunities that we want to pass on to our children depend on

---

[2]The predecessor to 8 U.S.C. § 1451(a).


[3]United States v. Zucca, 351 U.S. 91 (1956).

[4]Id.351 U.S. 91, quoting Bindczyck v. Finucane, 342 U.S.76, 83-84 (1951).

14

their secure rights to stay in this country and enjoy its guarantees of life." Id, 219 F. 3d 1087, at 1098-99. Because 8 U.S.C. 1451(a) is exclusive, Defendant avers that because it does not specifically provide for any type of summary procedures, that a Defendant in this type of case must be afforded all that 8 U.S.C. 1451 (a) implicates, which is a full, complete hearing, with opportunity to present witnesses, present his own evidence, and force the government to fulfill its difficult burden of proving that "misrepresentation" or "concealment" were involved in Defendant's naturalization process. This "whole record" approach is supported by Matsushita Elec. Indus. Co. v. Zenith Radio Corp. 475 U.S. 574 (1986), Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242(1986), which reflect the issue in Rule 56 that the emphasis is on "sufficient probative evidence to survive trial sufficiency motions". Childress and Davis, Federal Standards of Review, Sec. 5.04, p. 5-35, 3rd Ed. Matthew Bender & Co., Inc., 1999.

Assuming arguendo, in the universe of possibilities, that 8 U.S.C. 1451(a) does not prohibit the use of summary judgment in the clearest of cases, of which Defendant avers this is not one, there are other prudential issues which a District Court should consider in denying summary judgment in this case. Those issues deal with cases in which state of mind is at issue.

15

Defendant refers this court to <u>Croley v. Matson Navigation Company</u> , 434 F.2d 73  (5th Cir. C.A.5th, 1970) in which plaintiffs brought suit to recover for the injury of one shipyard employee and the wrongful death of another caused by an explosion of vapors given off by a preservative being used aboard a ship undergoing repairs. On appeal from the district court's summary judgment in favor of defendant, the Fifth Circuit held that there was a genuine issue of material fact as to the shipyard's knowledge of the dangerous characteristics of the material. In an opinion by Judge Wisdom, the appellate court observed:

> Knowledge on the part of the company can be proved only by showing the state of mind of its employees. The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind. Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue.
>
> Id, 434 F.2d 73, at 77.

Numerous cases in various contexts support the court's statement. Moreover, it frequently has been observed that when state of mind, or "consciousness and conscience" is involved, credibility often will be central to the case. <u>Allied Elevator, Inc. v. East Texas State Bank of Buna,</u> 965 F.2d 34, 37, (5th Cir.  1992) On the other hand, the fact that a party desires to have an affiant's statements tested by a jury, in and of itself, will not preclude  a grant of the motion unless the evidence

presented casts sufficient doubt on the affiant's credibility to create a genuine issue of material fact. Dyer v. MacDougall,, 201 F.2d 265 (2nd Cir., 1952).

In Wright and Miller, the authors noted that "summary judgment frequently is denied in contract actions requiring an inquiry into the intentions of the contracting parties,  or in antitrust cases in which the intentions or motives of the alleged conspirators are crucial. The good faith or motive of defendant also plays a significant role in cases involving civil rights and discrimination,  in patent litigation,  and in actions arising in the employment setting." Wright & Miller, § 2730. Actions Involving State of Mind. (Footnotes omitted).  The authors go on to note that "[a]nalogous principles apply to many other areas of the law in which a litigant's state of mind is of significance. Accordingly, summary judgment has been denied in cases involving common-law fraud,  fraud under the federal securities acts,  union disputes,  denaturalization,  mistake,  corporate judgment,  insurance disputes,  claims of tortious interference with contracts,   and other actions in which a party's state of mind  or good faith  was disputed." Id. (Footnotes omitted).

Clearly, in the denaturalization setting, summary judgment has been found to be totally inappropriate when the Defendant expressly denies any misrepresentation or concealment. In order to set aside an order of naturalization on the ground of fraud because of false testimony given by applicant, it is necessary for the

17

government to prove that testimony of applicant was intentionally false. U. S. v. Tuteur,, 215 F.2d 415, 418, (7th Cir.  C.A.7th, 1954), construing,  Immigration and Nationality Act, § 340, 8 U.S.C.A. § 1451.

In U. S. v. Tuteur,, 215 F.2d 415, 418, (7th Cir.  C.A.7th, 1954).  a proceeding brought to cancel respondent's certificate of naturalization, "the respondent in his answer expressly denie[d] that the testimony under attack was false, fraudulent and untrue. He also denies that it was given for the purpose of deceiving the Service.....Thereby he created a distinct factual issue as to intent, which was a necessary element of the petitioner's case. Summary judgment procedure does not apply to such a situation, because a question of intent is a question of fact." Id. Again, in U. S. v. Pellegrino, D.C.N.Y.1957, 155 F.Supp. 726 (1957), a denaturalization proceeding, a material issue of fact existed as to defendant's intent to deceive in obtaining naturalization.

In this cause, Defendant denies any misrepresentation and concealment when he applied for citizenship up to the time he took the oath of citizenship. Defendant avers, under oath, that his accusers in the cause to which he pled guilty lied to help themselves get a break, and in one instance, the case of Ramiro Santoscoy, to help his wife avoid prosecution if he were able to help the government convict someone. See Exhibit A, Statement by Servando Luna . See Also Exhibit D, Portion of

18

Transcript of United States v. Maria Muniz-Reyes, pp. 141-144. Defendant avers

that his other accuser, Virginia Cavazos was also offered a light sentence in return

for help in convicting anyone. Id, Exhibit D, p. 31-33. Defendant Luna's counsel

admits that he was not familiar with an Alford plea, and that he never asked, as a

matter of practice, whether a client is guilty. See Exhibit B, Statement by Hon. Joe

Valle. He merely reviews the facts as explained by the government, compares it to

what the Defendant says, states that the sentencing guidelines, if Defendant loses at

trial, may result in a certain sentence, or greater, and pretty much leaves it up to

Defendant as to which way to go if a defendant chooses to plea guilty. Id. Although

Defendant Luna's counsel did not request that Servando Luna plea guilty despite his

innocence, his counsel admits that this is a distinct possibility when one considers

the severity of sentence other defendants in this case, and related cases, received.

Id.  Defendant also notes that Agent Farias's statements in the Memorandum are

disingenuous when compared to his testimony upon deposition. Agent Farias

admitted in his deposition that he was involved in aiding applicants for

naturalization only for a thirty day stint. He admits that he remembers nothing about

the date, and that Defendant Luna apparently indicated that he had been arrested

once for driving while intoxicated because he had noted it on Defendant's

application. He did not remember how he translated any of the language on the

application. See Exhibit C, Agent Farias Deposition. Cf. Memorandum, Exhibit 8.

Such statements, whether Defendant Luna's, or Agent Farias, or Defendant Luna's

counsel raise genuine issues as to whether a crime took place at all, and certainly

place in serious contention Defendant's state of mind when he applied for

naturalization.  Because Defendant Luna has squarely placed a material issue of fact

before this court as to his intentions answering questions on his naturalization

application, and during the naturalization process, summary judgment is

inappropriate in this case, and must be denied.


### III. DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Defendant, Servando Luna, pursuant to FRCP Rule 56, respectfully files this

cross motion for summary judgment, and in support of his motion would show the

following:

1. That based upon Gorbach v. Reno,  219 F.3d 1087, 1091 (C.A.9

(Wash.),2000.), that the Immigration Service's improvident  administrative

denaturalization and removal of Defendant's Luna's citizenship is voided.

2. That due to the passage of time, and the decision of the Immigration service

to proceed in summary fashion, despite the availability of 8 U.S.C. 1451(a), and its

clear imperative, that any further litigation in this case, now,  violates Defendant's

Luna's right to due process.

3. That Defendant's right to due process has been violated because of the long period between the time his denaturalization process was begun by the Immigration Service and today, a period of almost seven years.

4. That his right to due process has been violated because important witnesses are no longer available, and that such witness would have been available had 8 U.S.C. 1451(a) been followed promptly. Such witnesses were either in prison or were available and had their whereabouts known to the Government.

5. That the long delay forever denies due process to Defendant Luna, and as such, this Court should find that as a matter of law that the government cannot prove its case without violating Defendant's right to due process; and, for that reason, this Petitioner's case should be dismissed with prejudice.

Every certificate of citizenship must be treated as granted upon condition that government may challenge it and demand its cancellation unless issued in accordance with statutory requirements. U S v. Anastasio,, 120 F.Supp. 435 (D.C.N.J.1954), reversed on other grounds 226 F.2d 912, certiorari denied 76 S.Ct. 787, 351 U.S. 931, 100 L.Ed. 1460. But, the procedures for challenging it are clear and require swift process. 8 U.S.C. Sec. 1451(a) is clear in its language and the duties under which those who are to effect its purpose have been delegated.

21

§ 1451. Revocation of naturalization

(a) Concealment of material evidence; refusal to testify

It shall be *the duty of the United States attorneys* for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively.

The prejudice that Mr. Luna faces, now that the bulk of witnesses who could come to his aid have been allowed to scatter and become unknown to all but themselves, cannot be overcome. As such, this court must find that as a matter of law, that any further proceedings in the cause will violate Mr. Luna's rights to due process, and that this cause should be dismissed with prejudice to the government. Following Minker, the facts and the law "should be construed as far as is reasonably possible in favor of the citizen." Id, Minker, 350, 179 , at 193.  Appellant argues that as in a criminal trial, in a civil process such as a naturalization proceeding, when evidence is destroyed or lost, special scrutiny must be undertaken to ascertain whether defendant's right to due process has been prejudiced, and three-pronged

examination to be applied involves following questions: first, was evidence

material; second, was defendant prejudiced by its destruction, and third, was

Government acting in good faith. U. S. v. Picariello, 1978, 568 F.2d 222. (1st Cir,

Me. 1978). In the instant cause, Defendant Luna's cause has been deeply harmed by

the purposeful delay by the Government in not proceeding in proper form and

promptly when all evidence was available and subject to easy disclosure and

development by all parties. To prove its case, the Government must prove that

Servando Luna intentionally lied, or, in other words, prove fraud, in which an

essential element is intent. Id, Tetuer, 215 F.2d at 418. 8 U.S.C. 1451(a) requires a

fully developed forum in which the issues of misrepresentation and concealment, if

to be proved, are to be put to the test in a truly adversarial process. To wait until

now, and to only claim 'collateral estoppel' as a basis for proving up factual

misrepresentation and concealment, as the Government's memorandum suggests,

reveals the threadbare basis of the government claim. What the Government wants

this court to approve is to have this case where the burden to Servando Luna to

prove that he didn't conceal or misrepresent. The Government loses nothing by in

asking for such a shift in burden in its Summary Judgment motion. However, by

delaying action, and not accusing him in a proper forum sooner, the government has

improved its position at the expense of Servando Luna's citizenship. The

government should not be rewarded for such delay when its duty was to move promptly. See 8 U.S.C. 1451 concerning U.S. Attorney's duty.   Clearly the United States attorney failed in his or her duty in not bringing this cause sooner. What damage has been done to Defendant's Luna's cause is not of his doing. As such, it should be the Government, and not Mr. Luna, who should suffer deprivation of its cause for failure to prosecute when prosecution was meet and certainly clearly should have been started. For that reason, this cause should be dismissed with prejudice to the government.

    Respectfully submitted,

    Philip T. Cowen
    Law Office of Philip Cowen
    500 E. Levee

    Brownsville, Texas 78520
    Tel.956-541-1691
    Fax 956-541-6872

By: _____
    Philip T. Cowen
    Federal I.D. 20717
    Texas State Bar No. 24001933
    Attorney for Defendant

24

## CERTIFICATE OF SERVICE

       This is to certify that on August 21, 2002, a true and correct copy of the above and foregoing document was served on the following parties by certified mail, return receipt no. _7000  1670  0006  1965  6871_.

Angel A. Crider
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
c/o Immigration and Naturalization Service
P. O. Box 670049
Houston, Texas 77267-0049

Philip T. Cowen

25