United States District Court
Southern District of Texas
FILED

SEP 13 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,                )        Civil Action No. B 01-115
                                         )
              Plaintiff,                 )
                                         )
       v.                                )
                                         )
SERVANDO LUNA,                           )
                                         )
              Defendant.                 )
_____)

**PLAINTIFF'S REPLY TO DEFENDANT'S
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANT'S UNTIMELY CROSS-MOTION
FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**
**PLAINTIFF'S REPLY AND RESPONSE TO "DEFENDANT'S**
**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**
**CROSS MOTION FOR SUMMARY JUDGMENT"**

**TOPIC**                                                                                          **PAGE**

I.     Reply to Defendant's Response to Plaintiff's Motion for
       Summary Judgment ................................................................................  1

       A.     Affirmative Collateral Estoppel Establishes, as a Matter of Law,
              that Mr. Luna Knowingly Committed the Crime of Possession
              with Intent to Distribute Marijuana from January 1, 1995,
              through April 26, 1995 ..................................................................  1

              1.     Affirmative Collateral Estoppel Applies Despite
                     Mr. Luna's Arguments Regarding <u>Alford</u> pleas ..................  2

              2.     Affirmative Collateral Estoppel Establishes All Essential
                     Matters and Elements of a Crime, Not Merely the
                     Existence of a Conviction ..................................................  4

       B.     Mr. Luna raises no genuine issue of fact regarding his
              illegal procurement of naturalization ............................................  6

       C.     Mr. Luna raises no genuine issue of fact regarding his
              procurement of naturalization by willful misrepresentation or
              concealment of material facts ........................................................  7

       D.     The United States may Obtain Denaturalization by Summary
              Judgment ......................................................................................  11

II.    Response to Defendant's Cross Motion for Summary Judgment ................  12

III.   Motion to Strike Affidavit of Servando Luna ...........................................  16

Table of Contents

## TABLE OF CITATIONS
### PLAINTIFF'S REPLY AND RESPONSE TO "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT"

**AUTHORITY**                                                    **PAGE(S)**

**CASES**

Armco, Inc. v. Armco Burglar Alarm Co., Inc., 693 F.2d 1155
(5th Cir. 1982) .............................................................    15

Costello v. United States, 365 U.S. 265 (1961) ........................    14

Espinoza-Espinoza v. I.N.S., 554 F.2d 921 (9th Cir. 1977) ........    10

Fedorenko v. United States, 449 U.S. 490 (1981) .....................    7, 14

Flynn v. Sandahl, 58 F.3d 283 (7th Cir. 1995) ...........................    6

Forbes v. I.N.S., 48 F.3d 439 (9th Cir. 1995) .............................    10

Gorbach v. Reno, 181 F.R.D. 642 (W.D. Wash. 1998),
aff'd 219 F.3d 1087 (9th Cir. 2000) ................................    15

Gorbach v. Reno, 219 F.3d 1087 (9th Cir. 2000) .......................    11, 12

Hyman v. Regenstein, 258 F.2d 502 (5th Cir. 1958) ..................    4

In re Coastal Plains, Inc., 179 F.3d 197 (5th Cir. 1999) .............    5

Lowery v. Stovall, 92 F.3d 219 (4th Cir. 1996) .........................    5

Matter of Bohart, 743 F.2d 313 (5th Cir. 1984) ........................    14

Nathan v. Tenna Corp., 560 F.2d 761 (7th Cir. 1977) ...............    4

North Carolina v. Alford, 400 U.S. 25 (1970) ...........................    2

Oaks v. Wainwright, 445 F.2d 1062 (5th Cir. 1971) ..................    3 n.1

Robinson v. Globe Newspaper Co., 26 F.Supp.2d 195 (D. Me. 1998) .......    5

Stallworth v. Harvey, 1996 WL 465389 (N.D. Ill. 1996) ...........    5

**AUTHORITY**                                                                    **PAGE(S)**

<u>CASES</u>

<u>Tomlinson v. Lefkowitz</u>, 334 F.2d 262 (5th Cir. 1964) ............................... 4

<u>United States v. Ballard</u>, 779 F.2d 287 (5th Cir. 1986) .............................. 14

<u>United States v. Bell</u>, 966 F.2d 914 (5th Cir. 1992) .................................... 3

<u>United States v. Charnowola</u>, 109 F.Supp. 810 (E.D. Mi. 1953) ................ 10 n.3

<u>United States v. Chruszczak</u>, 127 F.Supp. 743 (N.D. Oh. 1954) ................ 10 n.3

<u>United States v. Dailide</u>, 227 F.3d 385 (6th Cir. 2000) ............................... 12, 13

<u>United States v. Ekpin</u>, 2002 WL 1838129 (S.D. Tex. 2002) ..................... 7, 12, 13

<u>United States v. Kairys</u>, 600 F.Supp. 1254 (N.D. Ill.1984) ........................ 14

<u>United States v. Koreh</u>, 59 F.3d 431 (3d Cir. 1995) ................................... 12, 13

<u>United States v. Kungys</u>, 485 U.S. 759 (1988) .......................................... 7, 10 n.3

<u>United States v. Lampazianie</u>, 251 F.3d 519 (5th Cir. 2001) ...................... 3

<u>United States v. Lovasco</u>, 431 U.S. 783 (1977) .......................................... 13

<u>United States v. Robertson</u>, 698 F.2d 703 (5th Cir. 1983) .......................... 3

<u>United States v. Schellong</u>, 547 F.Supp. 569 (N.D. Ill.1982) .................... 14

<u>United States v. Schuk</u>, 565 F.Supp. 613 (E.D. Pa.1983) .......................... 14

<u>United States v. Sepe</u>, 474 F.2d 784 (5th Cir. 1973) ................................... 3 n.1

<u>United States v. Stelmokas</u>, 100 F.3d 302 (3d Cir. 1996) .......................... 13

<u>United States v. Szehinskyj</u>, 104 F.Supp.2d 480 (E.D. Pa. 2000) ........... 13

<u>United States v. Tuteur</u>, 215 F.2d 415 (7th Cir. 1954) ................................ 10 n.3

<u>United States v. Weintraub</u>, 613 F.2d 612 (6th Cir.1979) .......................... 14

| AUTHORITY | PAGE(S) |
|---|---|

**CASES**

United States v. Wise, 179 F.3d 184 (5th Cir. 1999) .................................. 3

Witter v. I.N.S., 113 F.3d 549 (5th Cir. 1997) .......................................... 10

**STATUTES AND RULES**

Fed. R. Civ. P. 12 ...................................................................... 14

Fed. R. Civ. P. 56 ...................................................................... 11-12

Fed. R. Civ. P. 81 ...................................................................... 12

Fed. R. Crim. 11(a)(2) ................................................................ 3

Fed. R. Evid. 801 ...................................................................... 16

INA § 101(a)(43)(B) ................................................................... 7

INA § 101(f)(3) ........................................................................ 7

INA § 101(f)(8) ........................................................................ 7

INA § 212(a)(i)(I) ..................................................................... 7

INA § 212(a)(2)(A)(i)(II) ............................................................. 7

INA § 212(a)(2)(C) .................................................................... 7

INA § 340(a), 8 U.S.C. § 1451(a) ..................................................... 10, 11, 12, 15

18 U.S.C. § 2 ......................................................................... 4

21 U.S.C. § 841(a)(1) ................................................................. 4

21 U.S.C. § 841(b)(1)(B) ............................................................. 4

**CODE OF FEDERAL REGULATIONS**

8 C.F.R. § 316.10 ..................................................................... 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. B 01-115 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SERVANDO LUNA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANT'S UNTIMELY CROSS-MOTION
FOR SUMMARY JUDGMENT**

COMES NOW , the United States of America ("plaintiff"), and files its reply to

Defendant's Response to Plaintiff's Motion for Summary Judgment and its opposition to

Defendant's untimely Cross-Motion for Summary Judgment. In addition, plaintiff moves to strike

affidavits submitted by Mr. Luna, as they contain inadmissible testimony.

I.    **REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR
      SUMMARY JUDGMENT**

A.    **Affirmative Collateral Estoppel Establishes, as a Matter of Law, that Mr.
      Luna Knowingly Committed the Crime of Possession with Intent to
      Distribute Marijuana from January 1, 1995, through April 26, 1995.**

As set forth in plaintiff's motion for summary judgment, through application of the

doctrine of affirmative collateral estoppel, the United States establishes, as a matter of law, that

Mr. Luna committed the crime of possession with intent to distribute marijuana from January 1,

1995, through April 26, 1995. MSJ at pp. 6-10. Although illegal procurement and procurement

United States v. Luna
Reply/Response to Defendant's Response & MSJ - Page 1

by misrepresentation or concealment of material fact are separate and independent bases for denaturalization, the fact that Mr. Luna knowingly committed this crime relates to both bases for summary judgment raised by the United States. Therefore, before examining each basis for summary judgment, Mr. Luna's challenge to the application of collateral estoppel will be addressed.

Whether affirmative collateral estoppel applies to Mr. Luna's case is a legal issue and not a factual issue. Mr. Luna, therefore, cannot raise any genuine issue of material fact regarding this conclusively established fact. Moreover, as explained in the following sections, Mr. Luna's legal challenges to the application of affirmative collateral estoppel are without merit.

### 1. Affirmative Collateral Estoppel Applies Despite Mr. Luna's Arguments Regarding Alford pleas.

Mr. Luna responds to plaintiff's argument that based upon collateral estoppel, Mr. Luna's guilty plea and conviction establish, as a matter of law, that he committed the crime of possession with intent to distribute marijuana, by arguing that "the fact of guilt is not essential to a court's acceptance of a plea, so long as the plea is tactically sound,"citing North Carolina v. Alford, 400 U.S. 25 (1970). See Defendant's Response and Motion ("Response") at p. 3. Apparently, Mr. Luna is attempting to analogize an Alford plea to his plea of guilty because, as he now contends, he only pled guilty to obtain the benefit of the plea agreement and not because he *actually* was guilty. Mr. Luna's lengthy discussion of Alford pleas and his professions of innocence aside, his arguments in this regard fail to address the collateral estoppel issue and are inapplicable because Mr. Luna did not enter an Alford plea.

The doctrine of affirmative collateral estoppel applies regardless of whether a conviction

was obtained through a guilty plea or a jury verdict. Thus, professions of innocence do not prevent application of collateral estoppel even when a defendant enters an Alford plea. Mr. Luna presents absolutely no authority supporting the inapplicability of collateral estoppel to convictions based upon Alford pleas.

In any event, even if Alford pleas prevent the application of affirmative collateral estoppel, Mr. Luna did not enter an Alford plea. During his criminal proceedings, Mr. Luna entered a plea of guilty to possession with intent to distribute approximately 250 kilograms of marijuana. The transcript of the plea colloquy shows that Mr. Luna stated that he was pleading guilty because he was guilty, and that he was involved with 250 kilograms of marijuana. See Plaintiff's Motion for Summary Judgment ("MSJ") at pp. 8-9; MSJ Ex. 6 at pp. 13:3-25, 14:1-25, 15:1-12. The transcript makes no mention of an Alford plea, or even of a conditional plea. Although the Fifth Circuit has historically refused to allow conditional pleas of guilty, United States v. Robertson, 698 F.2d 703, 706-07 (5th Cir. 1983),[1] it has allowed conditional guilty pleas pursuant to Federal Rule of Criminal 11(a)(2) since that subdivision was added by amendment in 1983. See United States v. Lampazianie, 251 F.3d 519, 525 n.20 (5th Cir. 2001); United States v. Bell, 966 F.2d 914, 915-17 (5th Cir. 1992). Such conditional plea, however, must be in writing, consented to by the prosecution, approved by the court, and explicitly identify the particular issues intended to be preserved for appeal. United States v. Wise, 179 F.3d 184, 186-87 (5th Cir. 1999).

Mr. Luna cannot point to any evidence to show that his guilty plea was an Alford plea or

---

[1] See also United States v. Sepe, 474 F.2d 784 (5th Cir. 1973); Oaks v. Wainwright, 445 F.2d 1062, 1063 n.3 (5th Cir. 1971) (noting that Alford only applies to State cases).

a conditional guilty plea. Quite to the contrary, the evidence indicates that Mr. Luna admitted

that he was pleading guilty because he was guilty, and that he possessed approximately 250

pounds of marijuana. See MSJ Ex. 6 at pp. 13:3-25, 14:1-25, 15:1-12. Furthermore, he never

denied his participation in the crime of possession with intent to distribute marijuana during his

plea colloquy. See generally MSJ, Ex. 6. Mr. Luna's argument concerning Alford pleas or

conditional guilty pleas, therefore, is irrelevant and misleading.

> **2.   Affirmative Collateral Estoppel Establishes All Essential Matters and Elements of a Crime, Not Merely the Existence of a Conviction.**

Mr. Luna also asserts that, even if collateral estoppel does apply to this case, the estoppel

"only applies to the issue of conviction." Response at p. 7. In support of this position, Mr. Luna

appears to be citing Tomlinson v. Lefkowitz, 334 F.2d 262, 264 (5th Cir. 1964), wherein the court

reasoned that "only facts essential to the judgment, as opposed to the evidentiary facts on which

the facts in issue depend, are subject to collateral estoppel." Mr. Luna, however, misunderstands

or misapplies the Fifth Circuit's holding. This holding means that collateral estoppel applies

where the facts determined are essential to the judgment. See id.; see also Hyman v. Regenstein,

258 F.2d 502, 510-11 (5th Cir. 1958).

In Mr. Luna's case, the fact that he *knowingly possessed marijuana with intent to*

*distribute* was essential to his conviction for possession with intent to distribute marijuana under

21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Collateral estoppel, therefore,

conclusively establishes that Mr. Luna committed the crime of possession of marijuana with intent

to distribute and that he did so knowingly, preventing him from now arguing that he did not

commit these actions. See, e.g., Nathan v. Tenna Corp., 560 F.2d 761, 764-65 (7th Cir. 1977)

(finding no genuine issue of material fact because defendant's guilty plea to federal mail fraud charges conclusively established that his conduct was criminal and precluded defendant from presenting evidence to the contrary in subsequent civil proceeding); see also Stallworth v. Harvey, 1996 WL 465389 (N.D. Ill. 1996) (admissions such as guilty pleas are trumps for purposes of summary judgment, estopping any argument in § 1983 action by plaintiff that he did not possess a gun because he previously pled guilty to aggravated assault in pointing a gun at the officer and to unlawful use of a weapon).

Where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter assume a contrary position, simply because his interests have changed,. See In re Coastal Plains, Inc., 179 F.3d 197 (5th Cir. 1999) (discussing doctrine of judicial estoppel whereby courts can prevent litigants from asserting contrary positions in different forums); see also Lowery v. Stovall, 92 F.3d 219 (4th Cir. 1996) (civil plaintiff who pled guilty to maliciously causing bodily injury to police officer with intent to kill precluded by judicial estoppel from relitigating that conduct in § 1983 action against officer for alleged violation of plaintiff's Fourth Amendment rights); Robinson v. Globe Newspaper Co., 26 F. Supp.2d 195 (D. Maine 1998) (granting summary judgment because police officer who pled guilty to criminal indictment alleging that he stole money from drug dealers, falsified search warrant affidavits, and arranged for dismissal of legitimate criminal charges was collaterally estopped from alleging falsity of these activities in defamation action against newspaper that reported such activities). Simply because Mr. Luna's interests may have changed, collateral estoppel still applies to affirmatively establish his knowing commission of possession of marijuana with intent to distribute.

United States v. Luna
Reply/Response to Defendant's Response & MSJ - Page 5

**B.    Mr. Luna Raises No Genuine Issue of Material Fact Regarding His Illegal Procurement of Naturalization.**

Aside from his meritless challenges to the application of collateral estoppel, Mr. Luna raises no arguments regarding his illegal procurement of naturalization. See MSJ at pp. 10-13. The government moved for summary judgment on two separate and distinct grounds: (1) illegal procurement; and (2) willful misrepresentation or concealment of material facts. First, the government argues that Mr. Luna illegally procured his naturalization because he committed unlawful acts that adversely reflect upon his moral character. Second, the government argues that Mr. Luna procured his naturalization by willful misrepresentations or concealment of material facts. Yet, Mr. Luna's response to plaintiff's motion for summary judgment only directly addresses the arguments dealing with misrepresentations. Other than challenging the application of collateral estoppel, Luna does not address the legal argument that he illegally procured his naturalization by committing unlawful acts that adversely reflected upon his moral character. In failing to contest or respond to plaintiff's illegal procurement argument, Mr. Luna admits there are no disputed fact issues for trial regarding Mr. Luna's illegal procurement of naturalization, although he does not waive legal arguments based on those undisputed facts. See. Flynn v. Sandahl, 58 F.3d 283, 288 (7th Cir. 1995).

As set forth in plaintiff's motion for summary judgment and reexamined herein, application of the doctrine of affirmative collateral estoppel conclusively establishes that Mr. Luna knowingly committed the crime of possession with intent to distribute marijuana from January 1, 1995, through April 26, 1995. MSJ at pp. 6-10. Mr. Luna's knowing commission of such offense during the statutory period preceding his naturalization precluded Mr. Luna from

establishing the good moral character required by statute for naturalization. See 8 C.F.R. §

316.10; INA §§ 101(f)(8), 101(a)(43)(B), 101(f)(3), 212(a)(i)(I), 212(a)(2)(A)(i)(II),

212(a)(2)(C); see also United States v. Ekpin, 2002 WL 1838129 at *6 (S.D. Tex. 2002)

(defendant's commission of sexual assault against his daughter prior to his naturalization for

which he was subsequently arrested and convicted precluded him from establishing the good

moral character required for naturalization). Both these determinations are legal determinations

for which Mr. Luna cannot raise an issue of material fact to defeat Plaintiff's motion for summary

judgment. Mr. Luna, therefore, illegally procured his naturalization and it must be revoked. See

Fedorenko v. United States, 449 U.S. 490, 506 (1981).

### C.    Mr. Luna Raises No Genuine Issue of Material Fact Regarding His Procurement of Naturalization by Willful Misrepresentation or Concealment of Material Fact.

As set forth in plaintiff's motion for summary judgment, there are four requirements for

revocation of naturalization that was procured by willful misrepresentation or concealment of

material facts: (1) the naturalized citizen must have misrepresented or concealed some fact, (2)

the misrepresentation or concealment must have been willful, (3) the fact must have been material,

and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation

or concealment. United States v. Kungys, 485 U.S. 759, 767 (1988). Mr. Luna's response,

however, only addresses the first two elements and raises no challenge to the United States'

evidence and argument regarding the last two elements - materiality and procurement.

First, Mr. Luna attempts to challenge the clear evidence that he misrepresented or

concealed a fact - the fact that he knowingly committed a crime. Apparently, Mr. Luna

United States v. Luna
Reply/Response to Defendant's Response & MSJ - Page 7

misinterprets the government's use of the doctrine of affirmative collateral estoppel and attempts to create the appearance of an issue of fact where there is none.  As stated in plaintiff's motion for summary judgment, the doctrine of affirmative collateral estoppel establishes as a matter of law that the defendant committed criminal acts.  Additionally, the evidence submitted in support of the motion for summary judgment establishes that the defendant was asked whether he had committed a crime for which he had not been arrested, and the defendant answered no - both during his interview with Officer Farias and when he signed his application at the end of his interviewing, certifying that all his answer were true and correct.  See MSJ Ex. 8 at ¶¶ 5-8; see also MSJ Ex. 7.  Accordingly, it is clear that the defendant misrepresented or concealed some fact.

Despite this clear evidence, Mr. Luna contends that Immigration Officer Farias's statements in his Declaration, attached at exhibit 8 to plaintiff's motion for summary judgment, are "disingenuous when compared to his testimony upon deposition."  Response at p. 19.  Yet, Mr. Luna does not raise any genuine issue of material fact regarding Officer Farias's testimony. First, Mr. Luna raises no actual issue.  Simply suggesting the existence of discrepancies does not necessarily raise an issue, as neither his declaration nor the response directly asserts that either Officer Farias did not ask the questions regarding Luna's criminal history or that Mr. Luna answered them consistent with the amended answer on this application.  Second, any issue is not genuine, as Mr. Luna points out no specific discrepancies between Officer Farias's declaration and his deposition testimony.  In fact, Officer Farias's declaration is consistent with his deposition testimony.  Officer Farias does not indicate in his declaration that he remembers Mr. Luna's interview, specifically, and testified during his deposition that he did not remember Mr.

Luna personally.  MSJ Ex. 8; Response Ex. C at pp. 19:22-25, 20:1-3.  Officer Farias's notations

on Luna's application are consistent with his declaration and deposition testimony as well.[2]  Third,

any issue regarding the oral questioning at the interview would not be dispositive.  At the

conclusion of his interview, Mr. Luna also signed his amended application, which contains the

misrepresentation or concealed material fact of his commission of marijuana possession with

intent to distribute, certifying all his answers to be true and correct.  MSJ, Ex. 7.  Mr. Luna has

raised no challenge that he did not sign his application at the end of his interview, certifying the

answers contained therein.  Accordingly, Mr. Luna has raised no genuine issue of material fact

regarding his misrepresentation or concealment of a fact.

Second, the government has established that the defendant's misrepresentation was willful

and the defendant's arguments raise no genuine issue of material fact.  Mr. Luna contends that

summary judgment is inappropriate where a party's state of mind is at issue and that the

government must prove that Mr. Luna had an intent to deceive.  Contrary to Mr. Luna's

contention, the government is not required to prove an intent to deceive to establish that a

---

[2] Officer Farias indicates in his declaration that his notes on Mr. Luna's application for naturalization indicate that Mr. Luna admitted, during his naturalization interview, to a driving while intoxicated offense that took place in 1984. MSJ Ex. 8 at ¶ 5. Officer Farias testified at his deposition that he made a notation on Mr. Luna's application regarding this offense at Mr. Luna's naturalization interview. Response, Ex. D at 12:9-14. In his declaration, Officer Farias indicates that it was his invariable practice to translate Part 7, Question 15(a) of the naturalization application exactly as it reads on the application. MSJ Ex. 8 at ¶ 5. During his deposition, when asked how he would translate the questions on the application into Spanish, Officer Farias answered that he did not translate all 15 questions in Part 7 verbatim and further testified that "[I] just translate it by how it reads" and "I would explain it to the best of my ability, the way I understand the question being asked." Response Ex. D at p. 14:9-25, 15:1-14.

Officer Farias's declaration is consistent with his testimony at his deposition. His notes on the application during Mr. Luna's naturalization interview indicate that Mr. Luna misrepresented or concealed his commission of possession with intent to distribute marijuana at his naturalization interview and when he signed his naturalization application. See MSJ Ex. 8. Officer Farias would not have approved an application for naturalization if the applicant had revealed that he had committed the offense of possession with intent to distribute marijuana. MSJ Ex. 8 at ¶ 6.

misrepresentation or concealment was willful. To prove that a misrepresentation or concealment

is willful, the government need only establish that a misrepresentation or concealment is deliberate

and voluntary. <u>Witter v. I.N.S.</u>, 113 F.3d 549, 554 (5th Cir. 1997); <u>Forbes v. I.N.S.</u>, 48 F.3d 439,

442 (9th Cir. 1995); <u>Espinoza-Espinoza v. I.N.S.</u>, 554 F.2d 921, 925 (9th Cir. 1977). "Proof of

intent to deceive is not required; . . . knowledge of the falsity of the representation is sufficient" to

establish a misrepresentation's willfulness under 8 U.S.C. § 1451(a).[3] <u>Witter</u>, 113 F.3d at 554.

Accordingly, Mr. Luna raises no genuine issue of fact in this area because the government is not

required to prove that Mr. Luna had an intent to deceive.

Under the appropriate legal standard - knowledge of the falsity - there is no genuine issue

of fact regarding Mr. Luna's willfulness. First, affirmative collateral estoppel establishes as a

matter of law that Mr. Luna *knowingly* committed the crime of possession with intent to distribute

in 1995, prior to his naturalization interview at which he falsely denied such criminal history.

Second, as Mr. Luna himself testified at this deposition, he knew that possession with intent to

distribute marijuana was a crime (<u>see</u> MSJ at p. 15; MSJ Ex. 3 at p. 160:11-19). Because Mr.

Luna knowingly committed a crime that he knew to be a crime, Mr. Luna knew his statements

denying such criminal history were false or misleading. Thus, his misrepresentation or

concealment of his criminal history was willful.

---

[3] Mr. Luna appears to be relying on cases in which false testimony with the intent to obtain
naturalization was at issue. See <u>United States v. Charnowola</u>, 109 F.Supp. 810 (E.D. Mi. 1953); <u>United States v.
Chruszczak</u>, 127 F.Supp. 743 (N.D. Ohio 1954) (both cited by Mr. Luna at page 12 of his Response); <u>United States
v. Tuteur</u>, 215 F.2d 415 (7th Cir. 1954) (cited by Mr. Luna at page 18 of his Response). Plaintiff did not argue that
summary judgment should be granted concerning the false testimony count in its complaint, so false testimony is
not an issue in these summary judgment proceedings. Further, these cases predate by 30 years <u>United States v.
Kungys</u>, 485 U.S. 759 (1988) wherein the Supreme Court sets forth the four requirements for revocation of
citizenship that was procured by willful misrepresentation or concealment of material facts, and, therefore, should
carry little authoritative weight.

Mr. Luna willfully misrepresented or concealed at his naturalization interview and when he signed his naturalization application that he had committed the offense of possession with intent to distribute marijuana in 1995. No genuine issue of material fact has been raised regarding Mr. Luna's misrepresentation or concealment during the naturalization process of his commission of possession with intent to distribute marijuana. Mr. Luna does not address the last two requirement of the Kungys analysis, i.e. whether the misrepresentation was material, and whether the individual procured naturalization as a result of the misrepresentation. Accordingly, Mr. Luna has not raised any genuine issues of fact with respect to these requirements to defeat plaintiff's motion for summary judgment.

### D.    The United States may Obtain Denaturalization by Summary Judgment.

Mr. Luna argues that the Ninth Circuit's decision in Gorbach v. Reno, 219 F.3d 1087 (9th Cir. 2000), precludes plaintiff from using the summary judgment procedure in a revocation of citizenship case before the federal district court. Yet, Mr. Luna misinterprets the holding in Gorbach, which deals with the Attorney General's authority to *administratively* denaturalize citizens and specifically holds that such power lies *exclusively* with the district courts in an action, such as this, under INA 340(a), 8 U.S.C. § 1451(a), by suggesting that the United States cannot seek summary judgment in district court actions to revoke citizenship. Contrary to Mr. Luna's suggestions, Gorbach does not address summary judgment in district court.

Section 340(a) of the Immigration and Nationality Act, 8 U.S.C. § 1451(a), provides for the United States attorneys to institute proceedings to revoke naturalization in the district courts of the United States. Federal Rule of Civil Procedure 56 provides for the filing of motions for summary judgment in federal district court proceedings. Simply because 8 U.S.C. § 1451(a)

does not specifically provide for the use of summary judgment does not mean that summary judgment is inappropriate in revocation of naturalization cases. Notably, the Federal Rules of Civil Procedure to not exclude application of Rule 56 to actions brought under 8 U.S.C. § 1451(a), but do limit application of the service and time limits for answers provided in Rule 4. Rule 81(a)(6) of the Federal Rules of Civil Procedure; see also Rule 81(a)(2) (indicating that the rules apply to citizenship proceedings). Despite the high and exacting standard of proof necessary in a denaturalization action, summary judgment is still permitted; and when no genuine issue of material fact exists necessitating a trial, courts have entered summary judgment in favor of the government. See, e.g., United States v. Dailide, 227 F.3d 385, 389 (6th Cir. 2000) (facts of denaturalization case may be such that revocation of citizenship at summary judgment stage is appropriate); see also United States v. Koreh, 59 F.3d 431 (3d Cir. 1995); Ekpin, 2002 WL 1838129.

## II.    RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Mr. Luna's cross-motion for summary judgment is without merit. Initially, Mr. Luna's cross-motion is untimely, and he never sought nor obtained leave of court to file his motion out of time. See Court's Order of February 13, 2002 (setting dispositive motion deadline at August 5, 2002). Mr. Luna's cross-motion could be denied on that basis alone. Further, Mr. Luna's untimely cross-motion should be denied because he has failed to establish as a matter of law that he is entitled to judgment in his favor.

First, Mr. Luna first argues that, pursuant to Gorbach, 219 F.3d 1087, the "Immigration Service's improvident administrative denaturalization and removal of Defendant's [sic] Luna's

citizenship is voided." Response at p. 20. The Immigration and Naturalization Service has never attempted to enforce any administrative revocation of Mr. Luna's naturalization. Thus, this argument has no bearing whatsoever upon the instant proceedings.

Second, Mr. Luna also argues that the instant civil action against him violates his rights to due process. Mr. Luna's due process argument is two fold. He first argues that his due process rights have been violated by plaintiff's request for summary judgment "despite the availability of 8 U.S.C. 1451(a), and its clear imperative, that any further litigation in this case, now, violates Defendant's [sic] Luna's right to due process." Response at p. 22. As discussed supra, Mr. Luna's argument that summary judgment is inappropriate or unavailable in revocation of naturalization proceedings is without merit. See, e.g., Dailide, 227 F.3d 385; Koreh, 59 F.3d 431; Ekpin, 2002 WL 1838129.

Mr. Luna further alleges that the passage of time in bringing the instant action violates his due process rights, as witnesses and evidence are no longer available to him. Response at pp. 21-24. Mr. Luna fails, however, to specify what evidence or witnesses are unavailable, and fails to cite any authority in support of his argument that his due process rights have been violated. Had he examined the case law, Mr. Luna would have discovered that denaturalization actions can be brought despite the passage of time, even a longer passage of time than is at issue here, without violating due process. United States v. Stelmokas, 100 F.3d 202 (3d Cir. 1996); United States v. Szehinskyj, 104 F. Supp.2d 480 (E.D. Pa. 2000). Moreover, even in a criminal case, the passage of a long period of time between knowledge by the prosecution of indictable conduct and an indictment is not enough to establish a due process violation, even if the delay was harmful to a defendant. United States v. Lovasco, 431 U.S. 783, 789 (1977). Rather, the defendants must

show that the government intentionally delayed the indictment to gain a tactical advantage, and

that the delay caused them actual and substantial prejudice. United States v. Ballard, 779 F.2d

287, 293 (5th Cir. 1986).  As discussed infra, the United States did not delay its action against

Mr. Luna and he has established no substantial prejudice.

Liberally construed, Mr. Luna's argument may be equitable in nature - essentially asserting

that the government's claim is barred by laches.  The Supreme Court, however, has noted that

"district courts lack equitable discretion to refrain from entering a judgment of denaturalization

against a naturalized citizen whose citizenship was procured illegally or by willful

misrepresentation of material facts." Fedorenko, 449 U.S. at 517.  In fact, the defense of laches

has been found to be unavailable to defendants in denaturalization cases.  See Costello v. United

States, 365 U.S. 265, 281 (1961) (federal courts have held that laches is not a defense against the

sovereign, although court did not reach issue in this denaturalization case); United States v.

Weintraub, 613 F.2d 612, 618-19 (6th Cir.1979) (Costello's "primary holding" was that laches is

"inappropriate" against the government); United States v. Schellong, 547 F.Supp. 569, 576-577

(N.D. Ill.1982) (laches defense unavailable in denaturalization case); United States v. Schuk, 565

F. Supp. 613, 615 (E.D. Pa.1983) (same); United States v. Kairys, 600 F.Supp. 1254, 1264 (N.D.

Ill.1984) (same).

Finally, laches is an affirmative defense, and the party asserting it has burden of proof.  See

Matter of Bohart, 743 F.2d 313 (5th Cir. 1984).  Because Mr. Luna did not raise this defense in

his answer, the defense is waived. Fed. R. Civ. Pr. 12.  Even if the defense were available to Mr.

Luna, he has not established that laches applies, let alone that due process was violated.  The Fifth

Circuit has identified three elements that must be present to support a finding of laches: (1)

United States v. Luna
Reply/Response to Defendant's Response & MSJ - Page 14

delay in asserting a right of claim; (2) that the delay was inexcusable; and (3) that undue prejudice resulted from the delay. Armco, Inc. v. Armco Burglar Alarm Co., Inc., 693 F.2d 1155, 1161 (5th Cir. 1982). Even if laches could be applied to bar the government's claim in denaturalization cases, Mr. Luna has failed to support this defense in this case. Mr. Luna asserts delay in the government's bringing its action against him, but does not allege that the delay was inexcusable or why. Further, as noted supra, Mr. Luna does not specify why or even if he was unduly prejudiced by any alleged delay.

In fact, there was no undue delay on the government's part. When it became aware of Mr. Luna's criminal history and naturalization fraud, the United States initiated denaturalization proceedings against Mr. Luna on November 10, 1997, when it attempted to serve a Notice of Intent to Revoke Naturalization on Mr. Luna to administratively revoke Mr. Luna's naturalization.[4] See Notice of Intent to Revoke Naturalization, dated October 29, 1997, attached hereto as Exhibit 11.[5] In 1998, the District Court for the Western District of Washington granted an injunction precluding the INS from conducting administrative proceedings to revoke naturalization. See Gorbach v. Reno, 181 F.R.D. 642 (W.D. Wash. 1998), aff'd 219 F.3d 1087 (9th Cir. 2000). As a result, the United States brought the instant proceedings under the still available, exclusive procedure in 340(a) of the INA, 8 U.S.C. § 1451(a). Therefore, the

---

[4] Mr. Luna refused to accept service of this Notice, although he filed a response contesting his denaturalization on December 12, 1997. See Letter dated December 11, 1997, attached hereto as Exhibit 12.

[5] Mr. Luna attended an administrative hearing regarding the revocation of his citizenship on or about February 6, 1998. See Notice of Hearing, dated January 2, 1998, attached hereto as Exhibit 13. On July 6, 1998, the Immigration and Naturalization Service ("INS") ordered the administrative revocation of Mr. Luna's citizenship. See Final Notice of Revocation of Naturalization, dated July 6, 1998, attached hereto as Exhibit 14. Mr. Luna appealed that decision to the Administrative Appeals Unit on August 5, 1998. See Notice of Appeal, dated July 31, 1998, attached hereto as Exhibit 15.

United States v. Luna
Reply/Response to Defendant's Response & MSJ - Page 15

government did not unduly delay action against Mr. Luna.

Accordingly, Mr. Luna's cross motion for summary judgment is insufficient as a matter of law and should be denied.

### III.    MOTION TO STRIKE AFFIDAVIT OF SERVANDO LUNA

Plaintiff moves to strike the affidavit of Servando Luna, dated August 13, 2002, attached as Exhibit A to Defendant's Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment, in that it contains the following hearsay statements:

> I note for the record that I was told by my attorney ... that the government had other defendants, or targets, pointing the finger at others to saves [sic] themselves and their family members. My attorney, as such, informed me that the case for the government, would have been difficult to overcome.

> I found out from Maria Muniz-Reyes that, without my knowledge, she had held onto some cash her son had, money which apparently was the reason she was pulled into her son's criminal activity. She also stated that both she and her son denied my involvement in anything, and that the government agents proceeded against me despite this.

> Mr. Santoscoy later told me that the only reason he fingered me was because he believed that I had fingered him, and also because he wished to save his wife from the indignity of facing criminal charges. Mr. Santoscoy asked me to forgive him and I did not at the time, although now I do and I recognize that I was wrong not to have forgiven him then.

To the extent that Mr. Luna uses these statements as proof of the matter asserted, these statements are hearsay that is inadmissible pursuant to Federal Rule of Evidence 801, plaintiff moves to strike the affidavit of Servando Luna, dated August 13, 2002.

Plaintiff further objects to Mr. Luna's affidavit in that it contains assertions that are speculative and beyond the knowledge of Mr. Luna. Mr. Luna asserts that it was "[his] understanding that in exchange for their cooperation, Ramiro Santoscoy and Virginia Cavazos

were treated favorably by the government." Plaintiff moves to strike Mr. Luna's affidavit in that it contains information beyond his personal knowledge.

Respectfully submitted,

MICHAEL SHELBY
United States Attorney
KEITH WYATT
Chief, Civil Division
LISA PUTNAM
Special Assistant United States Attorney
Immigration & Naturalization Service
P.O. Box 1711
Harlingen, Texas 78551

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division
RICHARD M. EVANS
Assistant Director
MICHELLE SLACK
Trial Attorney
Office of Immigration Litigation
U.S. Dept. of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone:  (202) 616-9340

ANGELA A. CRIDER, Attorney in Charge
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
c/o Immigration and Naturalization Service
P.O. Box 670049
Houston, Texas 77267-0049
Telephone: (281) 774-4731
Facsimile: (281) 774-5996
TX Bar No. 00790530
Southern District of Texas No. 26859

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Plaintiff's Reply and Response to Defendant's Response to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment was mailed by first class mail to Defendant's attorney, Philip Cowen, at 500 East Levee, Brownsville, Texas 78520 on this the 12th day of September, 2002.

Angela A. Crider, Trial Attorney
Primary Counsel for Plaintiff,
United States of America

United States v. Luna
Reply/Response to Defendant's Response & MSJ - Page 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. B 01-115 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SERVANDO LUNA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S CROSS
MOTION FOR SUMMARY JUDGMENT**

AND NOW this ___ day of _____, 2002, upon consideration of Defendant's

Cross Motion for Summary Judgment, Plaintiff's Response to Defendant's Cross Motion for

Summary Judgment, defendant's supporting memorandum, declarations and documents, and

plaintiff's opposing memoranda and documents,  IT IS HEREBY ORDERED:

That Defendant's Cross Motion for Summary Judgment is DENIED.


_____
HILDA G. TAGLE
UNITED STATES DISTRICT COURT JUDGE


Order