United States District Court
Southern District of Texas
ENTERED

OCT 2 9 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES, | § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION B-01-115 |
| SERVANDO LUNA, | § § § | |
| Defendant. | § | |

### Memorandum and Order

BE IT REMEMBERED that on October 29th, 2004, the Court considered the Plaintiff's Motion for Summary Judgment and Memorandum In Support of Its Motion For Summary Judgment [Dkt. Nos. 21 & 22]. This suit is an action to revoke and set aside the order of naturalization of Defendant Servando Luna ("Luna") and to cancel his Certificate of Naturalization, Number 22014670. Luna responded to the Government's motion and filed a Cross Motion For Summary Judgment [Dkt. No. 24]. The United States has filed a reply in support of its motion for summary judgment and a response to Luna's cross motion for summary judgment [Dkt. No. 25]. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court hereby **GRANTS** the Government's Motion for Summary Judgment [Dkt. No. 21] and **DENIES** Luna's Cross Motion For Summary Judgment [Dkt. No. 24].

### I.     UNDISPUTED BACKGROUND FACTS

The United States ("Government") has filed this action to revoke and set aside the order of naturalization of Servando Luna ("Luna") and to cancel his Certificate of Naturalization. The Government contends that Luna's naturalized citizenship was procured illegally and by willful misrepresentation and concealment of material facts.

On December 21, 1994, Luna filed with the Immigration and Naturalization Service

("INS") an Application for Naturalization, INS Form N-400. Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("Plaintiff's Memorandum") [Dkt. No. 22], Exhibit 7. Part 7, Question 15(a) of the application asks: "Have you ever: knowingly committed any crime for which you have not been arrested?" Id. Luna responded in the negative, and he signed the application under penalty of perjury, thereby swearing or affirming that the contents of the application were true and correct. Id.

Almost one year later, on October 26, 1995, INS Officer Jose Armando Farias interviewed Luna regarding his application for naturalization. Id. At the beginning of the interview Officer Farias placed Luna under oath. Id. at Exhibit 8. The interview was conducted in Spanish. Id. Luna testified that he had never committed a crime for which he had not been arrested. See id. at Exhibits 7 & 8. At the end of the interview, Luna signed a sworn statement that the contents of his application were true.[1] Id. at Exhibit 7. Based on Luna's application and interview, the INS approved his application for naturalization, and Luna took the oath of citizenship and became a naturalized citizen on December 4, 1995. Id. at Exhibit 9.

Shortly thereafter, on February 21, 1996, Luna was arrested for conspiring to possess with the intent to distribute over 1000 kilograms of marijuana[2] and possessing with the intent to distribute approximately 250 kilograms of marijuana.[3] Luna was indicted for these offenses on March 13, 1996. Id. at Exhibit 4. Count II of the indictment alleged Luna committed the offense of possession with intent to distribute from on or about January 1, 1995 to on or about April 26, 1995. Id. On May 2, 1996, Luna pled guilty to Count II of the indictment. Id. at Exhibit 5. At his rearraignment, Luna was represented by an attorney, placed under oath, and warned about the penalty of perjury. Id. at Exhibit 6. The Court asked Luna "Are you pleading guilty because you are guilty?" to which he responded "Yes,

---

[1] The Form N-400 has two signature lines for the applicant. The applicant signs on the first line at the time he files the application and signs on the second line after reviewing his answers with the INS officer during the subsequent interview.

[2] See Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

[3] See Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.

sir." Id. After the Assistant United States Attorney read Count II of the indictment, the Court asked Luna, "Is all of that true?" Id. Luna responded "It is true." Id. Subsequently, the Court found Luna guilty of Count II. Id. at Exhibit 5.

II.   **SUMMARY JUDGMENT STANDARDS**

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A fact is material if it "might affect the outcome of the suit under the governing law." Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute about a material fact is genuine only if evidence is such that a reasonable jury could return a verdict for the nonmoving party. Stafford v. True Temper Sports, 123 F.3d 291, 294 (5th Cir. 1997). The facts are to be construed with all "justifiable inferences" drawn in favor of the nonmoving party. Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). Factual disputes, however, are resolved in favor of the nonmoving party "only when there is an actual controversy--that is, when both parties have submitted evidence of contradictory facts." Laughlin v. Olszewski, 102 F.3d 190, 193 (5th Cir. 1996).

In a summary judgment motion, the moving party bears the "initial burden of demonstrating the absence of a material fact issue with respect to those issues on which that party bears the burden of proof at trial." United States v. Ekpin, 214 F. Supp. 2d 707, 711 (S.D.Tex. 2002). Once met by the moving party, the burden shifts to the nonmoving party to demonstrate the presence of an issue of material fact by producing "significant probative evidence." Texas Manufactured Housing Ass'n v. Nederland, 101 F.3d 1095, 1099 (5th Cir. 1996).

Mere reliance on the allegations or denials in the nonmovant's pleadings is not sufficient for the nonmovant to meet its burden. See, e.g., Morris, 144 F.3d at 380. Similarly, "unsubstantiated or conclusory assertions that a fact issue exists" do not satisfy this burden. Id. Rather, the nonmovant must present specific facts demonstrating "the

existence of a 'genuine' issue concerning every essential component of its case." <u>Id.</u>

## III. ANALYSIS

### A: Legal Standards for Revocation

To prevail in a proceeding to revoke naturalization, the Government must prove its case by clear, convincing, and unequivocal evidence, and leave no issue in doubt. <u>See Fedorenko v. United States</u>, 449 U.S. 490, 506 (1981). Section 340(a) of the Immigration and Naturalization Act ("INA") provides in relevant part:

> It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were *illegally procured* or were *procured by concealment of a material fact or by willful misrepresentation*.

8 U.S.C. § 1451(a) (emphasis added).

### B: Analysis of Grounds for Revoking Defendant's Naturalization

#### 1. Illegal Procurement

"Failure to comply with [congressionally imposed requirements] renders the certificate of citizenship 'illegally procured.'" <u>Fedorenko</u>, 449 U.S. at 506 (quoting 8 U.S.C. § 1452(a)). A prerequisite for naturalization is that the applicant be of "good moral character" for a statutory period of five years prior to filing the application for naturalization, and until the applicant takes the oath of citizenship. 8 U.S.C. § 1427(a)(3); <u>see also</u> 8 C.F.R. § 316.10(a)(1). Luna submitted his naturalization application on December 21, 1994, and took the oath of allegiance on December 4, 1995. Plaintiff's Memorandum [Dkt. No. 22], at Exhibits 7 & 9. Therefore, Luna was required to be of good moral character from December 21, 1989, until December 4, 1995.

Although the INA does not define "good moral character," certain individuals are precluded from establishing good moral character. <u>See</u> 8 U.S.C. § 1101 (f)(1)-(8). These provisions do not apply to the facts here. Nonetheless, according to 8 C.F.R. § 316.10(b)(2)(iii), an "applicant shall be found to lack moral character if during the statutory period the applicant . . . [v]iolated any law of the United States . . . relating to a controlled

substance, provided that the violation was not a single offense for simple possession of 30 grams or less of marijuana . . . ."

Here, there is no competent summary judgment evidence to controvert the district court's finding that Luna violated a law of the United States during the statutory period. Although the district court's finding occurred after the statutory period, his conviction was based on conduct occurring between January 1, 1995, and April 26, 1995 (see Plaintiff's Memorandum [Dkt. No. 22], at Exhibit 4), which is within the statutory period from December 21, 1989, through December 4, 1995. It is, therefore, indisputable that Luna violated a law of the United States within the statutory period.

The Court, therefore, finds that as a matter of law the Government has proven by clear, convincing, and unequivocal evidence that Luna lacked good moral character within the statutorily prescribed time period. Hence, the Court holds that Luna illegally procured his certificate of citizenship.

### 2.   Willful and Material Misrepresentations and Concealment

Naturalization revocation may be proper if the applicant concealed facts or made misrepresentations that were "both willful and material." 8 U.S.C. § 1451(a); <u>Kungys v. United States</u>, 485 U.S. 759, 767 (1988). To find that the applicant willfully misrepresented or concealed material facts, the Government must prove that: "the naturalized citizen must have misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." <u>Kungys</u>, 485 U.S. at 767.

The Government's summary judgment evidence proves that Luna was convicted for the offense of possession with intent to distribute marijuana from January 1, 1995, through April 26, 1995. Plaintiff's Memorandum [Dkt. No. 22], at Exhibit 5. Furthermore, the Government demonstrates that during his naturalization interview on October 26, 1995, Luna was asked and responded in the negative to whether he ever committed a crime for which he had not been arrested. <u>Id.</u> at Exhibits 7 & 8. Additionally, the Government establishes that at no point before his naturalization on December 4, 1995, did Luna reveal to the INS that he had committed the above crime. <u>Id.</u> The Government also proves that

if Luna's crime had been disclosed to the INS, that his naturalization application would never have been approved. Id. at Exhibit 8.

Accordingly, the Court holds that the Government has proven by clear and convincing evidence that Luna willfully concealed a material fact in procuring his citizenship.

### 3.   Collateral Estoppel

In his brief in opposition to the summary judgment motion, Luna provides no evidence that raises a genuine issue of material fact for either analysis above.[4] Rather, Luna simply and impermissibly attempts to relitigate his conviction. Specifically, Luna asserts that, despite eventually pleading guilty to possession with intent to distribute marijuana, he did not actually commit that crime and, therefore, did not testify falsely on his Form N-400 or at his interview with Officer Farias.

Under the doctrine of collateral estoppel, once an issue is actually litigated and necessarily decided by a court, that determination is conclusive in a different cause of action that involves a party to the earlier litigation. See State of Montana v. United States, 440 U.S. 147, 153 (1979). "It is well established that a prior criminal conviction may work as estoppel in favor of the government in a subsequent civil proceeding." Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568 (1951). Moreover, when an issue is resolved in favor of the government in a criminal prosecution, the defendant cannot contest that same issue in a subsequent civil suit brought by the government. See United States v. Nardone, 782 F. Supp. 996, 998 (M.D.Pa. 1990); see also Brazzell v. Adams, 493 F.2d 489, 490 (5th Cir. 1974) (finding that in a subsequent civil case, "the general rule is that collateral estoppel applies equally whether the prior criminal adjudication was based on a jury verdict or a guilty plea"). This rule applies regardless of whether the defendant was found guilty either by a jury verdict or by a guilty plea. Brazzell, 493 F.2d at 490.

Luna's argument rests entirely on his assertion that he in fact never committed any crime but only pled guilty to Count II of the indictment against him because he would face

---

[4] Luna did submit an affidavit. See Defendant's Motion for Summary Judgment [Dkt. No. 24], at Exhibit A. However, this Court orally struck the affidavit at the final pretrial and motions hearing held on October 3, 2002 [Dkt. No. 36].

less prison time than if he were to go to trial and lose. Luna argues that his guilty plea was in fact an Alford plea. North Carolina v. Alford, 400 U.S. 25, 37 (1970) ("Any individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

Luna, however, does not and can not point to anything said at his rearraignment that demonstrates that he entered an Alford plea. Rather, the record before the Court demonstrates that Luna unequivocally pled guilty to Count II of the indictment and affirmatively stated that all of the facts alleged in the indictment were true. As discussed between the Court and Luna during the rearraignment after the allegations were read:

| | |
|---|---|
| [Government]: | How do you plead to Count II? Guilty or not guilty? |
| [Luna]: | Guilty. |
| The Court: | Are you pleading guilty because you are guilty? |
| [Luna]: | Yes, sir. |
| The Court: | Has anybody promised you anything, threatened you or forced you? |
| [Luna]: | No, sir. |
| The Court: | Knowing everything that can happen to you, do you still want to plead guilty? |
| [Luna]: | Yes, sir. |
| The Court: | Listen very carefully. What are the factual allegations in this case? |
| [Government]: | Your Honor, the facts would show between January 1, 1995, and April 26, 1995, [Luna] reached an agreement with a person by the name of Ramiro Santoscoy from Mexico. Mr. Santoscoy provided [Luna] with 250 kilograms of marijuana which were imported into the U.S. Later on a portion of that load, 40 pounds, was seized in a vehicle belonging to Mr. Luna on April 26 of 1995. |
| The Court: | How many pounds? |

| | |
|---|---|
| [Government]: | 40 pounds was seized but there was a total of 250 kilograms that were originally possessed by Mr. Luna. |
| The Court: | Is that true? |
| [Luna]: | Yes. |
| The Court: | You admit it? |
| [Luna]: | Yes. |
| The Court: | That you were involved with 250 kilos? About 550 pounds, isn't it? |
| [Government]: | Yes, You Honor. |
| The Court: | You admit that? |
| [Luna]: | Yes, sir. |
| ... | |
| The Court: | Is all of that true? |
| [Luna]: | It is true. |
| The Court: | That makes you guilty and I am going to so find you guilty. And I am going to find that you were involved in 250 kilos of marijuana. |

Plaintiff's Memorandum [Dkt. No. 22], at Exhibit 6.

It is inconsequential that Luna's attorney was unaware of such a plea at the time of the hearing or that other factors may have pressed Luna into pleading guilty. Defendant's Motion for Summary Judgment [Dkt. No. 24], at Exhibit B. The fact remains that there is no evidence that Luna entered an <u>Alford</u> plea and the Court will not speculate about the circumstances leading up to Luna's guilty plea. Had Luna wished to contest the indictment, he could have gone to trial or attempted to enter an <u>Alford</u> plea. Instead, Luna chose to unequivocally plea guilty to Count II of the indictment. If Luna wished to contest his conviction he could have filed a habeas corpus action. This denaturalization proceeding is not the vehicle for challenging his conviction.

Furthermore, in <u>Emich Motors Corp. v. General Motors Corp.</u>, 340 U.S. 558, 569 (1951), the Court held that the estoppel effect of a prior conviction "extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." <u>See</u>

<u>Chisholm v. Defense Logistics Agency</u>, 656 F. 2d 42, 47-48 (3d Cir. 1981) ("The doctrine of collateral estoppel can only preclude relitigation of those issues actually litigated and decided in an earlier proceeding."). The issue determined at Luna's guilty plea was his guilt of the offense of possession with intent to distribute marijuana during the period between January 1, 1995, through April 26, 1995.

Luna argues that because he did not commit the crime, he did not violate the good moral requirement during the statutory period and that he could not willfully misrepresent or conceal this crime from the INS. Because Luna's conviction establishes that Luna did in fact commit the crime, Luna is now estopped from attacking that fact.

### IV. CONCLUSION AND ORDER

The Court concludes that Servando Luna illegally procured his naturalization because he lacked the good moral character required for naturalization eligibility. Additionally, Luna procured his naturalization by means of willful material misrepresentations and concealment because he did not reveal during his October 1995, INS interview that he had committed a crime for which he had not been arrested. It is therefore

**ORDERED** that Plaintiff's Motion for Summary Judgment [Dkt. No. 21] is **GRANTED**. It is further

**ORDERED** that Luna's Cross Motion For Summary Judgment [Dkt. No. 24] is **DENIED**. It is further

**ORDERED** that the December 4, 1995, naturalization of Servando Luna, ordered by the Attorney General of the United States and admitting Defendant Luna to citizenship of the United States is **REVOKED** and **SET ASIDE**, and Certificate of Naturalization No. 22014670 issued by the Attorney General of the United States is hereby **CANCELLED**. It is further

**ORDERED** that from the date of entry of this Order, Servando Luna is forever **RESTRAINED** and **ENJOINED** from claiming the rights, privileges, or advantages of United States citizenship based upon his December 4, 1995 naturalization. It is further

**ORDERED** that Servando Luna shall immediately **SURRENDER** and **DELIVER** his Certificate of Naturalization, any copies thereof in his possession, and any other indicia of

United States citizenship, to the United States Attorney for the Southern District of Texas, as representative of the Attorney General of the United States.

DONE at Brownsville, Texas, this 29 day of October, 2004.

_____
Hilda G. Tagle
United States District Judge